## Case No. 17,115.

### WALSH v. The H. M. WRIGHT.

[Newb. 494.] [1]

District Court, E. D. Louisiana. Dec., 1854.[2]

CARRIERS OF PASSENGERS — THEFT OF BAGGAGE — NEGLIGENCE — STEAMBOATS — WHAT IS NECESSARY BAGGAGE—ADMIRALTY JURISDICTION.

1. When, on board of a passenger steamer, time and opportunity were given for a thief, without detection, to enter a stateroom of the ladies' cabin, which was properly fastened, and steal a valise, it was *held*, that it exhibited a want of that care and watchfulness on the part of those managing the steamboat, which should always be observed in the police regulations of such a boat.

[Cited in The John Brooks, Case No. 7,335.]

2. Those engaged in running passenger steamers are required to use such a degree of vigilance as will effectually protect from all intrusion, during the night time, at least, that portion of the boat which is appropriated for the security and convenience of helpless females.

3. Common carriers of passengers are liable for the safe transportation of passengers' baggage.

4. Articles which it is usual for persons to carry with them, from necessity, or convenience, or amusement, fall within the term baggage; as also money not exceeding a reasonable amount.

5. A gold watch and gold spectacles were, in this case, necessary to the traveler's personal convenience.

6. When the baggage of a passenger had been stolen from her room, on board a passenger steamer, the admiralty court has jurisdiction over an action brought to recover its value.

[Cited in The General Buell v. Long, 18 Ohio St. 533.]

[This was a libel by A. M. Walsh against the steamboat H. M. Wright to recover the value of certain property stolen from her while a passenger on the steamboat.]

Mr. Cornelius, for libelant

Durant & Hornor, for respondent.

McCALEB, District Judge. The libelant in this case claims from the steamboat H. M. Wright the sum of $143, as the value of a gold watch, a pair of gold spectacles, a sum of money amounting to $11, some other small articles, and the valise in which they were deposited. These articles, it is alleged, were stolen from the stateroom of the boat, which was occupied by the libelant while the boat was on her voyage from New Orleans to Bayou Sara; and the evidence adduced in the cause leaves no doubt on the mind of the court that such was the fact. It is shown that the libelant is a lady of the highest respectability, residing in Woodville, Mississippi; that the stateroom in which the valise containing the articles stolen, was deposited, was occupied only by herself and a young lady, also of the highest respectability. It is shown that the valise was carefully deposited under her berth by the libelant when she retired to rest on the

night when the robbery was perpetrated. The respondent has attempted to raise a presumption that the articles were stolen by a servant belonging to another lady of the party with which the libelant was traveling; but this attempt has been unsuccessful. The conclusion I have formed from the evidence is, that the stateroom was entered and the articles taken by some one having no immediate employment about the ladies' cabin, and having no right to be there. Whether the intruder was a person connected with the boat, or a stranger, it is unnecessary to inquire. The fact that he had time and opportunity to enter a stateroom of the ladies' cabin, which, it is shown, was properly fastened, exhibits a want of that care and watchfulness which should always be observed in the police regulations of every boat engaged in the transportation of passengers. It is certainly not exacting too much of those in charge of these common carriers, to require of them that degree of vigilance which would effectually protect from all intrusion, during the night time, at least, that portion of the boat which is appropriated for the security and convenience of helpless females.

It is well established that steamboat proprietors, who are common carriers of passengers, for hire, are liable for the baggage of passengers; and it is equally well established that they are not subject to damages for the loss of anything that is not strictly baggage. This leads us to the inquiry, what is baggage strictly so called? The supreme court of Pennsylvania have considered that it is not obvious in what manner the court can restrict the quantity or value of the articles that may be deemed proper or useful for the ordinary purposes of traveling, because, in the nature of things, it is susceptible of no precise or definite rule; and when there is an attempt to abuse the privilege, a court must rely upon the intelligence and integrity of the jury to apply the proper corrective. The defendants in the particular case in which this decision was made, requested the court to charge the jury that they (the defendants) having had no notice that the trunks lost contained jewelry, or other articles of greater value than ordinary wearing apparel, they were not liable for such articles of jewelry; but the court refused, and the jury found for the plaintiff, and the judgment was affirmed upon appeal. "An agreement,' says Angell, in his work on Carriers, "to carry ordinary baggage may well be implied from the usual course of business; but the implication cannot be at all extended beyond such things as a traveler usually has with him, as a part of his baggage. All articles which it is usual for persons traveling to carry with them, whether from necessity or for convenience, or amusement, fall within the term baggage. So, likewise, does money, not exceeding a reasonable amount; and a watch has been held to be a part of a traveler's baggage, and his trunk a proper place in which to carry it." Ang. Carr. §:

115. See, also, 9 Wend. 85; 19 Wend. 534; and 6 Ohio, 358.

The proctor for the respondent has contended that the articles lost should have been deposited with the clerk for safe keeping. On the contrary, they were just such articles as a lady of the age and circumstances of the libellant would naturally prefer to keep about her person. They were necessary to her personal convenience and it is not shown that she failed in taking the proper precaution for their security.

It has also been contended that this is not a case of admiralty jurisdiction. This position cannot be maintained. A contract for the transportation of passengers for hire, is a contract over which the admiralty has exercised jurisdiction from a very early period. It is distinctly mentioned among the subjects of that jurisdiction by the learned Godolphin of the court of admiralty in England, in the reign of Charles I. It has repeatedly, within a few years past, been a subject of jurisdiction in the United States district court for the Southern district of New York, and has been clearly recognized as such, both in the district and circuit courts. It was also recognized as such in a recent case by Mr. Justice Campbell, in affirming a decree of this court. The value of the articles claimed by the libellant has been proven, and she is entitled to a judgment for the sum of $143, with costs.

This decree was affirmed on appeal by the circuit court. [Case unreported.]