Ball v. The New Jersey Steamboat Company.

HUDSON W. BALL *v*. THE NEW JERSEY STEAMBOAT COMPANY.

To charge a common carrier there must either be a special acceptance of the property or a delivery according to the established usage in the carrier's business ; and where by the usage, there is a person appointed to receive and take charge of a particular kind of property, the delivery must be to him, and not to one engaged in the discharge of other duties.

Where carrier has an agent on his boat to receive and take charge of baggage and to check it, it is not a good delivery to leave it upon the boat without obtaining a check or calling the agent's attention to it.

A cartman took the plaintiff's trunk to the defendants' wharf, and was there directed by a baggage master having charge of a different class of goods to take it on board the boat. The cartman deposited the trunk with other trunks at the baggage-room door, without obtaining a check for it or calling to it the attention of the baggage master having charge of that class of baggage ;—*Held*, that this was not such a delivery to or acceptance by the defendants as to make them liable for the loss of the trunk.

APPEAL by the plaintiff from a judgment entered on a referee's report.

This was an action against the defendants as common carriers to recover the value of a trunk placed on board their boat, the "New World." On the 14th of August, 1861, the plaintiff sent a trunk containing his wife's clothing by a cartman to be delivered on board one of the defendant's boats for Albany. The cartman took the trunk to the dock where one of the defendants' employees asked him " where he was going?" He answered that he wanted to put the trunk on board. The man then directed him "to drive to the first gangway and put it on board." The cartman carried it on board and left it with the other trunks at the baggage-room door on the boat. He did not ask the person who directed him for a check, though he had checks in his hand, and did not call any person's attention to the trunk when he placed it at the baggage-room door.

The person who spoke to the cartman was the dock agent of the defendants, whose duty it was to instruct persons coming with baggage not going west of Albany, to take it on board

the boat, or, if going west of that place, to have it checked on the dock and placed in baggage cars. The baggage-room on board the boat was in charge of another person, whose duty it was on presentation of passenger tickets to check baggage for Albany and Saratoga. When baggage was brought unaccompanied by a passenger ticket, he took charge of it, *if his attention was called to it, but not otherwise,* and he took measures to enable him to identify the person entitled to it. This trunk had no card or mark on it to identify it, so far as was shown by the evidence.

The referee found the above facts, and that this usage of the defendants had existed for thirteen years; that the defendants had large cards posted conspicuously with the words, "Albany baggage checked on the boat. Baggage for the west checked on the dock," and that the trunk had been demanded by the plaintiff, but never recovered. He also found that the plaintiff was negligent in delivering the trunk, and that the complaint should be dismissed.

On this report the defendants entered up judgment, from which the plaintiff appealed.

*Henry Whinfield,* for plaintiff appellant.

*Charles Jones,* for defendant respondent.

By the Court.—Daly, F. J.—There was no contract, express or implied, to carry the trunk as baggage, for no person went with it as a passenger that night in the defendant's steamboat; nor was it delivered to be transported as freight, which, by the established course of the defendant's business, is received by clerks as it comes upon the wharf, and taken to a different set of clerks, where it is weighed, or tallied, entered, receipted for, and then stowed away; the rule being that the delivery of the goods, to charge the carrier, must be to the servant or agent appointed to receive them, and not to one engaged in other duties (*Blanchard* v. *Isaacs,* 3 Barb. R., 388 ; *Leigh* v. *Smith,* 1 Car. & P., 638). The question in this case, therefore, is whether there was such a delivering and acceptance of the trunk as would make the defendants responsible for its loss, and in my judgment there was not.

The only intimation which the cartman received from the plaintiff was to take the trunk to the steamboat *New World,*

Ball v. The New Jersey Steamboat Company.

for Albany. As the cartman came upon the wharf a person having checks in his hand, and who was checking trunks, asked him where he was going, and upon his answering that he wanted to put the trunk on board the boat for Albany, this person told him to drive to the first gangway and put it on board. By the regulations which the defendants had established, all baggage going west of Albany was checked upon the wharf, and baggage for Albany and Saratoga, upon the boat. Notice of this regulation upon large cards, was posted at conspicuous places on the wharf, and there was a baggage-room on board of the boat (in charge of a baggage-man), who received and checked baggage for Albany and Saratoga upon the presentation of the passenger's ticket. Baggage was not checked unless a passenger ticket was shown; but if baggage was brought by a cartman or other person with the statement that it was going to Albany, the baggage man put it in the baggage room with the unchecked baggage, and did not deliver it without a description of the baggage or its contents, and upon doing so he took a receipt. When baggage came unaccompanied by a passenger, the baggage man took charge of it *if his attention was called to it, but not otherwise*, and took directions which would enable him to identify the person entitled to receive it. Most of the baggage which came in that way, was brought by the City Express Companies, and was identified by the card and number they put upon it, a corresponding card and number being given by them to the passenger.

The cartman took the trunk upon the boat and deposited it with other trunks at the baggage-room door, and then left without saying anything or calling any one's attention to it, and the referee has found that the trunk had on it no mark or direction indicating to whom it belonged or where it was to go. The contents of the trunk consisted of the plaintiff's wife's clothing. On the following evening he bought a passenger ticket for her, and she went to Albany that night without a trunk.

If the plaintiff meant to send the trunk to Albany by the steamboat a day in advance of the departure of his wife, he should either have sent it as freight, or instructed the cartman to put it into the custody of some person upon the boat author-

ized to take charge of it. The cartman, receiving no other in-struction but to take it to the steamboat *New World*, for Albany, may very rationally have supposed that the plaintiff or some other person was going with it as a passenger in the boat that night, who, upon coming on board would have it checked in the usual way. He was not directed to get a check for it, nor could he have obtained one without procuring and paying for a passenger ticket, and having received no other instruction but what has been above stated, he no doubt con-sidered his duty sufficiently discharged when he placed it with the other trunks at the baggage-room door. That the trunk was not taken charge of by the baggage-man was owing to the fact that his attention was not called to it, and this was attrib-utable to the plaintiff's rather than to the cartman's negligence.

To charge a carrier or carriers, there must be an acceptance of the goods either in a special manner, or according to the usage of their business (Story on Bailments, § 533 ; Angell on Carriers, § 140), and in this case there was not such a delivery into the custody of, and acceptance of the trunk for carriage by, the de-fendants as would make them liable for its loss, or which would create an ordinary bailment. The direction given by the de-fendant's agent upon the wharf to the cartman to take the trunk on board was not an acceptance. His duties were lim-ited to checking the baggage of emigrants and to instructing persons having baggage going west of Albany to have it checked upon the wharf, and if it were for Albany to put it on board of the boat. He gave the proper instructions to the cartman, and if the trunk was not checked on board the boat, as it should have been, if the intention was to send it to Albany as baggage, it was through the plaintiff's negligence in not giving the cart-man instructions to that effect. Left upon the boat without anything to indicate to whom it belonged or where it was to go ; and without being brought to the notice of any one in authority upon the boat, it was in the power of any dishonest person who went up in the boat that night to get a check for it as his own property. It was held in *Leigh v. Smith*, 1 Car. & P., 638, that the delivery, to bind the carrier, must be to some one in authority, and that a delivery to one of the crew of a vessel would not be sufficient. In *Buckman v. Levy* (3 Camp., 414), the goods were left upon the wharf piled

up among other goods, with the name upon them of the person to whom they belonged and the place to which they were to be sent, while a person supposed to be a servant of the wharfinger was upon the wharf, and it was held that there was not such a delivery to the wharfinger as would make him responsible for the loss of the goods, and in *Packard* v. *Getman*, 6 Cow. R., 757, it was held that even where it was the usage to leave the goods upon the wharf near the boat, it is not a good delivery unless accompanied by express notice to the carrier. The responsibility of the carrier does not commence until there has been a complete delivery to him (2 Kent's Com. 604), and where, as in this case, by the established usage of the defendant's business, there was an agent upon the boat to receive and take charge of baggage for Albany, who gave a voucher or check for it, it was not a good delivery to leave the trunk upon the boat without either getting a check for it, or calling this agent's attention to it (*Selway* v. *Holloway*, 1 Ld. Ray., 46; *Cobban* v. *Downe*, 5 Esp. R., 41; *Tower* v. *Utica and Schenectady R. R. Co.*, 7 Hill, 47; *Bochem* v. *Combe*, 2 Maul. & S., 172; *Harris* v. *Packwood*, 3 Taunt., 264; *Lovett* v. *Hobbs*, 2 Show, 128. The obligation to carry the trunk as baggage, as I have said, did not exist, as that is an obligation incident to and growing out of the contract for the carriage of the passenger, and no passenger went with it. If it had been called to the attention of the baggage-man, and he had taken it and placed it with the unchecked baggage, the defendants would have been entitled to a compensation for its carriage; but upon the facts stated, no obligation on their part can be implied, either to carry it as baggage, or as freight. The report of the referee should be confirmed.