Daly, F. J.
A carrier of passengers has the right to establish any reasonable regulation which he considers necessary to secure the safety of the baggage of his passengers ; and if the passenger knows of the regulation, and his baggage is lost through his neglect or refusal to comply with it, the carrier is not answerable (Jencks v. Coleman, 2 Sumn., 221 ; Hall v. Power, 12 Metv., 482; Ball v. New Jersey Steamboat Co., 1 Daly, 491; Mudgett v. The Bay State Co., Id., 155 ; Van Horn v. Ker *234 mit, 4 E. D. Smith, 453 ; Angell on Carriers, §§ 530, 530, a, 530 b). This has been, from the time of Coke, held to be the law in respect to the liability of inn-keepers, for reasons that are equally applicable to the carriers of passengers (Calye’s Case, 8 Coke, 33 ; Wilson v. Halpin, 1 Daly, 496 ; Sanders v. Spencer, Dyer, 266, b; Van Wyck v. Howard, 12 How. Pr., 147; Burgess v. Clement, 4 Maule & S., 306 ; Richmond v. Smith, 8 B. & C., 9.) But to impose that responsibility upon the passenger, notice should be given to him of the regulation, or it should be shown, expressly, that he knew it or that it had become, by general usage, so notorious and universal that he must or ought to have known it.
Where the proprietors of a steamboat have, as the defendants had in this instance, an express place for the keeping of baggage, known as the baggage-room, a regulation that passengers should not have their baggage in their state-rooms, or only such baggage as might be required for their use during the passage, would not be an unreasonable one. The defendants’ witnesses testified, that a large-printed notice entitled “ rules and regulations to be observed upon this steamer,” had been conspicuously posted up in different parts of the boat, and that a small copy of it had been put up in each stateroom, in the most prominent part, beside the looking glass, and the light would fall upon it.
Among other regulations embodied in this instance was one in these words: “ Baggage not allowed in cabins ] or state-rooms. This company will not be liable for baggage unless checked.” Their witnesses also testified that there was but one general entrance to the stateroom saloon. That at the foot of the stairs, leading into the saloon, a man wras placed, whose duty it was to prevent passengers carrying valises up stairs ; that at the head of the stairway there were servants in attendance to give notice of persons coming up with baggage, and that upon the day in question, there was a man at the bottom of the stairs leading into the the saloon, charged with the duty.
*235 All this may have been done, and yet, if the passenger, as he said, knew nothing of the regulation, the defendants were not released from their liability. He not only testified so, but also that he carried his valise up stairs, and that there was no one at the bottom of the •stairs who said anything to him about baggage, nor any person on board nor in the state-room. He further testified, that there was no such notice as the defendants’ witnesses testified to, in the state-room or on any part of the vessel. That he traveled every summer upon boats of this line, but not on this boat before, as that was her first season; that he had seen no such notice at any time upon the boat; that having studied law, he looked for this notice, because he thought that the company ought to have notified the passengers about their baggage and about taking care of it; that it was “ simply intuition on his part.” In addition to his testimony, a passenger, who was on the boat that night, was calíéd by the plaintiff, and he testified that it was his impression that there was no such notice upon the boat; that he would not swear positively that there was not, but would swear positively that he had not seen it, and could not remember whether he had looked or not; but it was his impression that Macklin, the passenger whose valise was lost, called his attention to the fact that there was no such notice upon the steamboat. He also testified, that he had frequently traveled upon the boat, and taken baggage to his state-room, and that he had never been forbidden to do so by anybody, and that he had seen passengers with their baggage up stairs.
The question, whether this passenger had or had not knowledge of this regulation was, upon this evidence, a question of fact, upon which the jury have found against the defendants. If the case rested simply upon the facts sworn to by the defendants’ witnesses, they" would probably have been sufficient to infer that the passenger must have been apprised of the regulation, or rather to have warranted that presumption, in the absence of any evidence to the contrary. But there was evidence di *236 rectly to the contrary, and the question therefore, was one which the jury alone could pass upon.
It remains, therefore, only to consider whether the judge erred in refusing to charge any of the propositions which were submitted to him, or erred in those portions of his charge to which exceptions were taken.
The passenger had engaged a state-room several days before; and upon the day in question he went to the office upon the boat, got the key of the state-room, and paid his fare.
TjLie contract for Ms passage was therefore complete, and the carriage and safe-keeping of his baggage was, on the part of the defendants, a duty incident to the contract. The taking of Ms valise with Mm into the state-room, was not such a taking of it into Ms own exclusive custody and guardianship as to absolve the carrier from any duty, liability or obligation respecting it (Mudgett v. Bay State Steamboat Co., 1 Daly, 151; Tower v. Utica &c., R. R. Co., 7 Hill, 47; Burgess v. Clements, 4 Maule & S., 306; Robinson v. Dunmore, 2 Bos. & P., 47 ; Calye’s Case, 8 Coke, 33 ; Richards v. New London, &c., Railw. Co., 7 Com. Bench, 859 ; Redfield on Carriers, § 73 ; Angell on Carriers, §§ 140, 113). Assuming this to be the law, it disposes of many of the requests to charge. It disposes of the first, for the passenger, having paid his fare and taken his valise into the state-room, it was, whilst there, in the language of the request, committed to the care and safe keeping of the defendants, if the passenger, as the jury must have found, knew nothing of the regulation.
This was substantially determined in Calye’s Case (8 Coke, 33), and held to be settled from the time of the Year Books (2 Hen. 6, 21 ; 11 Hen. 4, 45 ; 42 El. 3, 11).
The defendants were not entitled to have the fourth request charged, as there was no evidence of any notice to the passenger, that the baggage not required for necessary daily use should be deposited in a designated place ; the printed notice being that baggage was not allowed in the cabins or state-rooms, without any dis *237 crimination as to what might "be necessary for daily use. The valise which the pass mger placed in the stateroom contained nothing "but wearing apparel for a week’s journey, and the articles which a traveler carried for daily use : a razor, a strop, a comb and brushes, so even if this had been the notice, I think the law would hold that the few things which the valise contained,—for beyond the toilet articles named, there was simply what would suffice for a change of apparel,—came under the designation of articles for daily use.
What has been already said is a sufficient answer to the fifth request. In respect to the sixth, there was no evidence of any negligence on the part of the passenger.
He placed the valise and his umbrella in the stateroom, and locked the door, and when he came back five minutes afterwards, they were gone. They were probably stolen by some person who obtained access to the stateroom by means of the window or by opening the door with a duplicate key or a pick.
There was no foundation, therefore, for a proposition which implied the want of common care and attention on his part. It is no excuse says Coke, in Calye’s Case {supra) “ for the inn-keeper to say that he delivered the key of the chamber-door to the guest in which he is lodged, and that he left the chamber-door open, for he ought to keep the goods and chattels of his guest in safety without any stealing and purloining,” and if this was good law in respect to an inn, it is equally so in respect to the description of steamboats in which the traveler is carried, lodged, and fed ; which may, with some liberty of speech, be called a traveling inn.
The eighth request was without point or meaning, unless the facilities were named which the defendants had placed at the passenger’s disposal for the protection of his property.
The j udge did not know what facilities were meant, nor do I. His attention, therefore, should have been drawn to the portion of the evidence upon which the de« *238 fendants relied as a foundation for this proposition, for without this it was unintelligible.
The ninth request should not have been charged. Carriers of passengers are, as respects the carriage of the passenger’s baggage, which is an accessory to the principal contract, held to the same responsibility as common carriers in general, and must answer for the loss of it, though it happened without their fault (Hawkins v. Hoffman, 6 Hill, 589). As is the case, therefore, with common carriers, they are not allowed to show that they took all possible care of it (Dale v. Hall, 1 Wils., 281), but are insurers against every thing but the act of God, or public enemies.
The tenth request, that there must be a special acceptance of the property, ora delivery according to the established usage in the carrier’s business, is disposed of in the fact that the passenger paid his fare, received the key of his state-room, and took his valise there with him ; and in respect to the eleventh request the defendants had the full benefit of it in the judge’s charge.
The first exception to the judge’s charge, is his statement to the jury, that the passenger is under no obligation whatever to read any notice that may be posted on a mast or in a room, or in any conspicuous place. It is well settled that common carriers cannot affect or limit their responsibility by putting up notices (Hollister v. Nowlen, 19 Wend. 234; Camden, &c. Railway v. Belknap, 21 Id., 354; Clark v. Paxton, Id., 153; Powell v. Myers, 26 Id., 594; Alexander v. Greene, 3 Hill, 9 ; 7 Id., 533) ; and this being the case, it is not obligatory upon the passenger to read them. They may be employed by the carriers as a means of bringing to the. passenger’s knowledge any reasonable regulation ; but it does not follow from this that it is obligatory upon him to read all such notices ; for, if we were to hold that, we would have to hold that whether he read them or not, it being obligatory upon him to read them, he would be chargeable with a knowledge of their contents ; and this is farther than the law has ever gone.
*239 All, therefore, that the judge could be understood as saying was, that the passenger was not obliged to read them in the sense of being answerable for a knowledge of what they contained, where he had the opportunity to read, and neglected or omitted to do so, which was not, in my judgment, erroneous.
The other exception is to the observation of the judge that, if the notice was brought home to the passenger, it did not affect the contract of carriage ; that it bore with some degree of importance upon the question of negligence, and it was only in this respect that it was of any importance in the case. This, as an isolated proposition, might possibly mislead ; but it could not do so in this case, for the jury were told in the commencement of the charge that the case depended principally upon the question whether notice of the regulation had been given to the passenger ; and after the observation excepted to had been made, the judge stated to the jury in what respect the knowledge of the notice was of importance ; that is, that it was for the jury to say whether the passenger, if he knew the regulation, was not guilty of negligence in allowing his things to remain in the state-room. But that was not all. He told them further, that, if the notice was put up in the state-rooms, it might or might not be negligence on his part not to read it, and he left it for them to say, if it was posted up, whether he was guilty of negligence in not reading it, adding the observation that if he was guilty of negligence in not reading it, he could not recover; as he must be free from contributory negligence ; so that the previous observation, in connection with what followed it, amounted to about this, that the contract for caniage was made by the payment of the fare and by the delivery of the key of the state-room to the passenger, but if the jury thought that he was guilty of negligence, if he knew of the regulation and did not conformy to it, or if he did not read the notices if one was put up in the state-room, that he could not recover,—which was putting the case even stronger for the defendants than I *240 think they were entitled to. The carrier’s liability for'ji the loss of baggage arises from the obligation and dutyf which is imposed upon him by law from the public na- \ ture of his calling, and is not necessarily founded upon | ' the contract; for an action for the loss of baggage may j be brought by a servant, though the contract for his passage may have been made with the master who engages for it and pays the fare (Marshall v. York, &c. Railway, 11 C. B., 655 ; Grant v. Newton, 1 E. D. Smith, 95 ; Hall v. Cheney, 36 N. H., 26.
In conclusion, I will add that, if it-were necessary, I should feel disposed to hold that, even if the passenger knew of this regulation, it would be no infraction of it for him to take the valise, in view of what it contained, into the state-room with him.
As I have said, it contained little else than a change of apparel, two shirts, two drawers, two pantaloons, &c., and the ordinary articles that a man uses to make his toilet. The defendants’ witnesses testified that it was customary under this regulation for the passengers to take light baggage, or as the witness expressed it, hand-satchels, witli them into the state-room cabin.
When a passenger pays in addition for a separate or private room, or as it is called, a state-room, in these boats, he does so to get greater and better accommodation, and for the privacy and security which it affords. If he has simply with him a valise,—a small portable article coming under the denomination of light baggage, as it may be carried in the hand, and that from its limited size usually admits of little else than the clothing and toilet articles required for present use,—he has the right, where such is the general character of its contents, to take it with him into the chamber provided for him, and where he is to pass the night; and having placed it there and locked the door, the obligation-is upon the carrier to see that his property is not purloined or stolen. Any regulation,' the effect of which would be to prevent him from doing this, would be unreasonable. It is essential to the traveler’s convenience and comfort, and *241 the law could not descend into the particularity of in-, sisting that he should open the valise, and, taking out or it exactly what was requisite for the night, lock it up, and then take it and deposit in the "baggage-room for safe keeping. „
It might put him to considerable inconvenience if he had to do this, and in this case, the passenger had scarcely time to do it; for he put the valise in the stateroom and left for five minutes to bid his sister good-bye, and when he returned it was gone. In fact, it disappeared so quickly as scarcely to afford him time even to see or read the rules and regulations alleged to have been posted up, with which he was required to conform.
Judgment should be affirmed.
Beady, J., concurred.