HARRY C. ADAMS, Respondent, *v.* THE NEW JERSEY STEAM-BOAT COMPANY, Appellant.

1. CARRIERS — STEAMBOAT COMPANY — RESPONSIBILITY FOR PASSEN-GER'S PROPERTY. The rigid rule of the common law which applies between innkeeper and guest as to responsibility for the guest's personal effects is properly applicable between a passenger steamboat company and passengers to whom it furnishes rooms and entertainment.

2. STEAMBOAT COMPANY — LIABILITY FOR PASSENGER'S PROPERTY LOST FROM STATEROOM. A passenger steamboat company is liable as an insurer, and, hence, without proof of negligence on its part, to a passenger who has procured and paid for a stateroom, for the loss from his state-room, without negligence on his part, of a sum of money reasonable and proper for him to carry upon his person for the expenses of his journey, left by him in his clothing upon retiring for the night.

3. RAILROAD SLEEPING CARS. A distinction exists between the degree of responsibility resting upon a steamboat company for the personal effects of a passenger occupying a stateroom and that resting upon a railroad company in respect to a passenger occupying a berth in a sleeping car.

*Adams* v. *N. J. Steamboat Co.*, 9 Misc. Rep. 25, affirmed.

(Argued October 30, 1896; decided December 8, 1896.)

APPEAL, by permission, from a judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered August 1, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial made upon the minutes.

This action was brought to recover a sum of money alleged

to have been lost by plaintiff when a passenger upon one of defendant's steamboats.

The facts, so far as material, are stated in the opinion.

*W. P. Prentice* for appellant. Plaintiff did not show facts sufficient to present a cause of action. (*Carpenter* v. *N. Y., N. H. & H. R. R. Co.*, 124 N. Y. 57; *Morris* v. *L. S. & M. S. R. Co.*, 148 N. Y. 182; *Henderson* v. *L. & N. R. R.*, 123 U. S. 61; *S. C. P. Co.* v. *Vanderpool*, 16 B. Mon. 302; *Clark* v. *Burns*, 118 Mass. 273; *Gleason* v. *G. T. Co.*, 32 Wis. 84; *Abbot* v. *Bradstreet*, 55 Me. 530; *McKee* v. *Owen*, 15 Mich. 115; *Weeks* v. *N. Y., N. H. & H. R. R. R. Co.*, 72 N. Y. 50; Hutchinson on Carriers [2d ed.], § 700; *Rosenplaenter* v. *Roessle*, 54 N. Y. 262; *Becker* v. *Warner*, 90 Hun, 187.)

*Westmoreland D. Davis* for respondent. The liability of the defendant is analogous to that of an innkeeper. (*Crozier* v. *B., N. Y. & N. S. Co.*, 43 How. Pr. 466, 468; *Mudgett* v. *B. S. Co.*, 1 Daly, 151, 153; *Gore* v. *N. & N. Y. T. Co.*, 2 Daly, 254, 256; *Hulett* v. *Swift*, 33 N. Y. 571, 572; *Piper* v. *Manny*, 21 Wend. 282, 284; 2 Pars. on Cont. [6th ed.] 145.) The presumption is, that the loss occurred through defendant's default, and this can only be repelled by proof that the loss was attributable to negligence or fraud of plaintiff, or to act of God, or of the public enemy. (*Crozier* v. *B., N. Y. & N. S. Co.*, 43 How. Pr. 466, 468; *Hulett* v. *Swift*, 33 N. Y. 571, 575.) Defendant is liable though the loss happened without its fault. (*Hulett* v. *Swift*, 33 N. Y. 571, 575; *Grinnell* v. *Cook*, 3 Hill, 485, 488; *Macklin* v. *N. J. S. Co.*, 7 Abb. Pr. [N. S.] 229; *Crozier* v. *B., N. Y. & N. S. Co.*, 43 How. Pr. 466; *Holsapple* v. *R., W. & O. R. R. Co.*, 86 N. Y. 275; *Westcott* v. *Fargo*, 61 N. Y. 542; *Edsall* v. *C. & A. R. R. & T. Co.*, 50 N. Y. 661; *M. C. R. R. Co.* v. *M. S. Mfg. Co.*, 16 Wall. 318; Hutchinson on Carriers [2d ed.], 270.) The money and clothing which plaintiff was entitled to have in his stateroom were in the custody and possession of defendant. (*Mudgett* v. *B. S. Co.*, 1 Daly, 151, 153; *Macklin* v. *N. J.*

*S. Co.,* 7 Abb. Pr. [N. S.] 229, 230; *Calye's Case,* 8 Co. 33; *Gore* v. *N. & N. Y. I. Co.,* 2 Daly, 254, 255, 257; *Crozier* v. *B., N. Y. & N. S. Co.,* 43 How. Pr. 466, 467.) Plaintiff was entitled to have in his stateroom sufficient money for the expenses of his journey, and while there it was in the custody of defendant. (*Crozier* v. *B., N. Y. & N. S. Co.,* 43 How. Pr. 466, 468; *Merrill* v. *Grinnell,* 30 N. Y. 594, 609, 610; *Turpey* v. *Williams,* 3 Daly, 162, 165; *Taylor* v. *Monnet,* 1 Abb. Pr. 325; *Hutchinson* on Carriers [2d ed.], 819; *Fairfax* v. *N. Y. C. & H. R. R. R. Co.,* 73 N. Y. 167; *Curtis* v. v. *D., L. & W. R. R. Co.,* 74 N. Y. 116; *Holsapple* v. *R., W. & O. R. R. Co.,* 86 N. Y. 275, 277.) Defendant is liable for plaintiff's loss, unless plaintiff, by his own negligence, contributed to the loss; and, if such were the fact, the burden of proof was on defendant to show it, as well as its own freedom from negligence. (*Aiken* v. *Westcott,* 16 N. Y. S. R. 600; *Faucett* v. *Nichols,* 64 N. Y. 377; *Crozier* v. *B., N. Y. & N. S. Co.,* 43 How. Pr. 466; *Bucher* v. *N. Y. C. & H. R. R. R. Co.,* 98 N. Y. 128.) There was no negligence on the part of the plaintiff. (*Macklin* v. *N. J. S. Co.,* 7 Abb. Pr. [N. S.] 229, 237; *Hollister* v. *Nowlen,* 19 Wend. 234; *Piper* v. *Manny,* 21 Wend. 282; *Classen* v. *Leopold,* 2 Sweeny, 705; Parsons on Cont. [6th ed.] 149; *Westcott* v. *Fargo,* 61 N. Y. 542; *Blum* v. *S. P. P. C. Co.,* 1 Flippin, 500; *Carpenter* v. *N. Y., N. H. & H. R. Co.,* 124 N. Y. 53.) Plaintiff was under no obligation whatever to read a notice posted in his stateroom. (*Macklin* v. *N. J. S. Co.,* 7 Abb. Pr. [N. S.] 229; *Hollister* v. *Nowlen,* 19 Wend. 234, 241, 247; *C. & A. R. R. & T. Co.* v. *Belknap,* 21 Wend. 354, 360; *Crozier* v. *B., N. Y. & N. S. Co.,* 43 How. Pr. 466; *Kellogg* v. *Sweeney,* 1 Lans. 397, 404; *Kerr* v. *Willan,* 2 Stark. 53; *Richmond* v. *Smith,* 8 B. & C. 9; *Fitzgerald* v. *Quann,* 109 N. Y. 441; *Bertles* v. *Nunan,* 92 N. Y. 152; Sedgwick on Const. Law [2d ed.], 267; *Pope* v. *Hall,* 14 La. Ann. 324.)

O'BRIEN, J.   On the night of the 17th of June, 1889, the plaintiff was a cabin passenger from New York to Albany

on the defendant's steamer Drew, and for the usual and regular charge was assigned to a stateroom on the boat. The plaintiff's ultimate destination was St. Paul, in the state of Minnesota, and he had upon his person the sum of $160 in money for the purpose of defraying his expenses of the journey. The plaintiff, on retiring for the night, left this money in his clothing in the stateroom, having locked the door and fastened the windows. During the night it was stolen by some person who apparently reached it through the window of the room.

The plaintiff's relations to the defendant as a passenger, the loss without negligence on his part, and the other fact that the sum lost was reasonable and proper for him to carry upon his person to defray the expenses of the journey, have all been found by the verdict of the jury in favor of the plaintiff. The appeal presents, therefore, but a single question, and that is, whether the defendant is in law liable for this loss without any proof of negligence on its part. The learned trial judge instructed the jury that it was, and the jury, after passing upon the other questions of fact in the case, rendered a verdict in favor of the plaintiff for the amount of money so stolen. The judgment entered upon the verdict was affirmed at General Term, and that court has allowed an appeal to this court.

The defendant has, therefore, been held liable as an insurer against the loss which one of its passengers sustained under the circumstances stated. The principle upon which innkeepers are charged by the common law as insurers of the money or personal effects of their guests originated in public policy. It was deemed to be a sound and necessary rule that this class of persons should be subjected to a high degree of responsibility. in cases where an extraordinary confidence is necessarily reposed in them, and where great temptation to fraud and danger of plunder exists by reason of the peculiar relations of the parties. (Story on Bailments, § 464; 2 Kent's Com. 592; *Hulett* v. *Swift*, 33 N. Y. 571.) The relations that exist between a steamboat company and its passengers,

who have procured staterooms for their comfort during the journey, differ in no essential respect from those that exist between the innkeeper and his guests.

The passenger procures and pays for his room for the same reasons that a guest at an inn does. There are the same opportunities for fraud and plunder on the part of the carrier that was originally supposed to furnish a temptation to the landlord to violate his duty to the guest.

A steamer carrying passengers upon the water, and furnishing them with rooms and entertainment, is, for all practical purposes, a floating inn, and hence the duties which the proprietors owe to the passengers in their charge ought to be the same. No good reason is apparent for relaxing the rigid rule of the common law which applies as between innkeeper and guest, since the same considerations of public policy apply to both relations.

The defendant, as a common carrier, would have been liable for the personal baggage of the plaintiff unless the loss was caused by the act of God or the public enemies, and a reasonable sum of money for the payment of his expenses, if carried by the passenger in his trunk, would be included in the liability for loss of baggage. (*Merrill* v. *Grinnell*, 30 N. Y. 594; *Merritt* v. *Earle*, 29 N. Y. 115; *Elliott* v. *Rossell*, 10 John. 7; Brown on Carriers, § 41; Redfield on Carriers, § 24; Angell on Carriers, § 80.)

Since all questions of negligence on the part of the plaintiff, as well as those growing out of the claim that some notice was posted in the room regarding the carrier's liability for the money, have been disposed of by the verdict, it is difficult to give any good reason why the measure of liability should be less for the loss of the money under the circumstances than for the loss of what might be strictly called baggage.

The question involved in this case was very fully and ably discussed in the case of *Crozier* v. *Boston, N. Y. & Newport Steamboat Company* (43 How. Pr. 466), and in *Macklin* v. *New Jersey Steamboat Company* (7 Abb. Pr. 229). The liability of the carrier in such cases as an insurer seems to hav

been very clearly demonstrated in the opinion of the court in both actions upon reason, public policy and judicial authority. It appears from a copy of the remittitur attached to the brief of plaintiff's counsel that the judgment in the latter case was affirmed in this court, though it seems that the case was not reported.

It was held in *Carpenter* v. *N. Y., N. H. & H. R. R. Co.* (124 N. Y. 53) that a railroad running sleeping coaches on its road was not liable for the loss of money taken from a passenger while in his berth, during the night, without some proof of negligence on its part. That case does not, we think, control the question now under consideration. Sleeping-car companies are neither innkeepers nor carriers. A berth in a sleeping car is a convenience of modern origin, and the rules of the common law in regard to carriers or innkeepers have not been extended to this new relation.

This class of conveyances are attached to the regular trains upon railroads for the purpose of furnishing extra accommodations, not to the public at large nor to all the passengers, but to that limited number who wish to pay for them. The contract for transportation and liability for loss of baggage is with the railroad, the real carrier. All the relations of passenger and carrier are established by the contract implied in the purchase of the regular railroad ticket. and the sleeping car is but an adjunct to it only for such of the passengers as wish to pay an additional charge for the comfort and luxury of a special apartment in a special car. The relations of the carrier to a passenger occupying one of these berths are quite different with respect to his personal effects from those which exist at common law between the innkeeper and his guest, or a steamboat company that has taken entire charge of the traveler by assigning to him a stateroom. While the company running sleeping cars is held to a high degree of care in such cases, it is not liable for a loss of this character without some proof of negligence. The liability as insurers which the common law imposed upon carriers and innkeepers has not been extended to these modern appliances for personal comfort, for reasons that are

stated quite fully in the adjudged cases and that do not apply in the case at bar. (*Ulrich* v. *N. Y. C. & H. R. R. R. Co.*, 108 N. Y. 80 ; *Pullman P. C. Co.* v. *Smith*, 73 Ill. 360 ; *Woodruff S. & P. C. Co.* v. *Diehl*, 84 Ind. 474 ; *Lewis* v. *N. Y. S. C. Co.*, 143 Mass. 267.)

But aside from authority, it is quite obvious that the passenger has no right to expect, and in fact does not expect, the same degree of security from thieves while in an open berth in a car on a railroad as in a stateroom of a steamboat, securely locked and otherwise guarded from intrusion. In the latter case, when he retires for the night, he ought to be able to rely upon the company for his protection with the same faith that the guest can rely upon the protection of the innkeeper, since the two relations are quite analogous. In the former the contract and the relations of the parties differ at least to such an extent as to justify some modification of the common-law rule of responsibility. The use of sleeping cars by passengers in modern times created relations between the parties to the contract that were unknown to the common law, and to which the rule of absolute responsibility could not be applied without great injustice in many cases. But in the case at bar no good reason is perceived for relaxing the ancient rule and none can be deduced from the authorities. The relations that exist between the carrier and the passenger who secures a berth in a sleeping car or in a drawing-room car upon a railroad are exceptional and peculiar. The contract which gives the passenger the right to occupy a berth or a seat does not alone secure to him the right of transportation. It simply gives him the right to enjoy special accommodations at a specified place in the train. The carrier by railroad does not undertake to insure the personal effects of the passenger which are carried upon his person against depredation by thieves. It is bound, no doubt, to use due care to protect the passenger in this respect, and it might well be held to a higher degree of care when it assigns sleeping berths to passengers for an extra compensation than in cases where they remain in the ordinary coaches in a condition to protect themselves. But it is only upon the ground of negligence that the railroad company can be held

22

liable to the passenger for money stolen from his person during the journey. The ground of the responsibility is the same as to all the passengers, whether they use sleeping berths or not, though the degree of care required may be different. Some proof must be given that the carrier failed to perform the duty of protection to the passenger that is implied in the contract before the question of responsibility can arise, whether the passenger be in one of the sleeping berths or in a seat in the ordinary car. The principle upon which the responsibility rests is the same in either case, though the degree of care to which the carrier is held may be different. That must be measured by the danger to which the passenger is exposed from thieves and with reference to all the circumstances of the case. The carrier of passengers by railroad, whether the passenger be assigned to the ordinary coaches or to a berth in a special car, has never been held to that high degree of responsibility that governs the relations of innkeeper and guest, and it would perhaps be unjust to so extend the liability when the nature and character of the duties which it assumes are considered.

But the traveler who pays for his passage, and engages a room in one of the modern floating palaces that cross the sea or navigate the interior waters of the country, establishes legal relations with the carrier that cannot well be distinguished from those that exist between the hotelkeeper and his guests. The carrier in that case undertakes to provide for all his wants, including a private room for his exclusive use, which is to be as free from all intrusion as that assigned to the guest at a hotel. The two relations, if not identical, bear such close analogy to each other that the same rule of responsibility should govern.

We are of the opinion, therefore, that the defendant was properly held liable in this case for the money stolen from the plaintiff without any proof of negligence.

The judgment should be affirmed.

All concur.

Judgment affirmed.