Irvin, Sr., of and from all claims of creditors of the firm of Richard Irvin & Co. If this agreement is set aside, this obligation of Richard Irvin, Jr., would also fall, and all of those interested in the estate of Richard Irvin, Sr., are entitled to be heard before that contract or agreement should be set aside. The complaint alleges that these fraudulent representations and concealments were made to those interested in the estate of Richard Irvin, Sr. I do not understand that that agreement could be set aside as to some of the parties and sustained as to the others. It is either fraudulent or void as to all of the beneficiaries of Richard Irvin, or it is valid, and as there is an apparent advantage to the estate of Richard Irvin, Sr., in the covenants to the estate of Richard Irvin, Sr., in the covenants of Richard Irvin, Jr., all of those who executed the agreement and are interested in the property transferred should be made parties defendant before it is adjudged fraudulent and void.

I think, therefore, the judgment appealed from should be reversed, with costs, and the demurrer sustained, upon the ground that there is a defect of parties defendant, in that all of the parties who executed the agreement mentioned in the ninth paragraph of the complaint are not parties to the action, with one bill of costs to the demurring defendants, with leave to the plaintiffs to amend the summons and complaint by making all of the parties to that agreement parties defendant in this action, upon payment of costs in this court and in the court below. All concur.

---

(108 App. Div. 279.)

## HART v. NORTH GERMAN LLOYD S. S. CO.

(Supreme Court, Appellate Division, First Department. November 10, 1905.)

1. SHIPPING—CARRIAGE OF PASSENGER—LOSS OF BAGGAGE—NEGLIGENCE OF PASSENGER.

Any negligence of a steamship passenger in leaving the porthole of his stateroom open and the door unlocked when he left the room did not defeat his right to recover of the steamship company for articles taken from the room, where the steward of the steamship had in the meantime been in the room; it being his duty, if necessary to protect the passenger's goods, to have closed the porthole and locked the door.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 554.]

2. SAME.

The owners of a steamship are responsible for the personal baggage of a passenger, unless the loss thereof was caused by the act of God or of public enemies.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 553, 554.]

3. APPEAL—RENDITION OF JUDGMENT ABSOLUTE.

Where the Appellate Term allowed an appeal to the Appellate Division from an order for a new trial in an action tried in a Municipal Court, without requiring a stipulation that the respondent should have judgment absolute if the order were affirmed, the Appellate Division, on affirmance, is without power to render judgment absolute, notwithstanding Code Civ. Proc. § 3191, requiring such a stipulation on appeal from an order for new trial in an action tried in the City Court.

Appeal from Appellate Term.

Action by Louis G. Hart against the North German Lloyd Steam-ship Company. From a determination of the Appellate Term (92 N. Y. Supp. 338), reversing a judgment of the Municipal Court in favor of the defendant and granting a new trial, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, CLARKE, INGRAHAM, and LAUGHLIN, JJ.

Joseph Larocque, Jr., for appellant.

Ernest A. Cardozo, for respondent.

INGRAHAM, J. The action was brought in the Municipal Court upon a written complaint which alleged that the defendant, a foreign corporation having an office in the city of New York, owned, controlled, and operated steamships between New York and various foreign ports; that the plaintiff, a citizen of the United States, was a passenger upon one of the defendant's steamships from Italy to New York; that on the 31st of March, 1903, while said steamship was in the harbor of Naples, Italy, during such voyage, by the carelessness and negligence of the defendant, its officers, servants, and employés, it permitted or suffered some person or persons, unknown to the plaintiff's assignor, to enter his stateroom on said steamer and take therefrom certain articles of personal baggage, to wit, two studs set with diamonds and rubies and one pair of gold sleeve buttons set with diamonds, of the fair and reasonable value of $225; that said personal baggage was lost or stolen without any fault or negligence on the part of the plaintiff's assignor and solely through the negligence of the defendant. The answer admits that the plaintiff's assignor was a passenger upon the steamer, and that the defendant undertook to carry him and other passengers from Italy to New York, together with such baggage and personal effects as he should deliver to the defendant for such transportation, and denies the other allegations of the complaint, and alleges that if said articles, or any of them, were lost by Harrison, such loss occurred solely by reason of said Harrison's own carelessness and negligence; and the answer also sets up a special contract by which Harrison, the plaintiff's assignor, agreed that the defendant would not be liable for loss of, or injury to, or delay in delivery of, the baggage or personal effects of the said Harrison beyond the amount of $100.

Upon the trial it was proved that Harrison occupied a stateroom on one of the defendant's steamers; that on the morning of March 31, 1903, the steamer was in the port of Naples; that he had kept the porthole closed during the night, and that to the best of his recollection it was closed when he left the room in the morning; that he left his stateroom early in the morning and went ashore, and did not return until the afternoon; that on entering the stateroom on his return he found the door open and hooked back, and the porthole open; that the studs had been torn from the bosom of his shirt and that the sleeve buttons were also missing; that he

did not see any steward enter his room until after he left in the morning, and that he at once reported his loss to the steward, the first officer, and the captain of the steamer. Upon cross-examination he stated that these studs and sleeve buttons were in a shirt which was hanging upon a hook about 12 or 14 inches from the porthole, and when he left his stateroom in the morning he did not lock the door. The valet was called, and testified that he saw the shirt with the studs in it on the morning of the 31st of March, when he went into the stateroom to awaken the plaintiff's assignor, and that when he returned in the afternoon he saw the shirt lying upon the sofa in the room, with the studs and sleeve buttons gone; and that when he went into the stateroom in the morning the porthole was closed. On behalf of the defendant, the steward who had charge of the stateroom occupied by the plaintiff's assignor testified that on the morning that these articles were lost he went to the stateroom as usual between 9 and 10 o'clock; that when he entered the room the porthole was open, and plaintiff's assignor's evening shirt was hanging on a hook to the left of the porthole, and that there were some studs in it; that the steward did not close the porthole, as it was customary to allow the room to be aired in the morning; that the porthole was 12 or 14 feet above the water and was about 10 inches in diameter; and that he did not touch the shirt or studs, and left everything in the room as he found it. Upon this testimony the court found that the plaintiff's assignor was guilty of negligence and awarded judgment for the defendant. The Appellate Term reversed this judgment and ordered a new trial, and from that determination the defendant appeals.

I agree with the Appellate Term that there was no evidence to justify a finding that the plaintiff's assignor was guilty of negligence. There was no evidence that the plaintiff's assignor opened the porthole or left it open when he left his stateroom. Portholes upon steamers are under the control of the officers of the ship, and not of the passengers. The steward of the ship, when he went into the room to clean it up, noticed the shirt and studs there and that the porthole was open. It was his duty to protect the passenger's baggage; and, if it was negligence to leave the porthole open or the door unlocked under the circumstances, it was his negligence in not closing them. But there is no evidence to show that the open porthole had any relation to the loss of these articles. It was 12 or 14 feet above the water, and it is extremely improbable that any one from the outside could have secured these articles through the porthole. The shirt was not taken, but was left upon a sofa in the room. If these articles had been taken through the porthole, the shirt would have also been taken, as it was quite impossible for any one outside of the ship to remove the studs and sleeve buttons and leave the shirt in the room. I do not think it was negligence for the plaintiff's assignor, when he left his room, not to lock the door. But, assuming that he should have locked it, when the steward went in to fix up the room, he saw that the door was open, and, if it was necessary to lock the door to secure the baggage of the passenger, it was his duty to lock it. It was thus the failure of the steward to

lock the door or close the porthole after he had finished cleaning up the room which caused the loss, and not the failure of the passenger to lock the door when he left the room in the morning.

It is now settled in this state that the owners of a passenger steamship are responsible for the personal baggage of a passenger, unless the loss was caused by the act of God or of public enemies. Adams v. New Jersey Steamboat Co., 151 N. Y. 163, 45 N. E. 369, 34 L. R. A. 682, 56 Am. St. Rep. 616. Judge O'Brien, delivering the opinion in that case, says:

"The traveler, who pays for his passage and engages a room in one of the modern floating palaces that cross the sea or navigate the interior waters of the country, establishes legal relations with the carrier that cannot well be distinguished from those that exist between the hotel keeper and his guests. The carrier in that case undertakes to provide for all his wants, including a private room for his exclusive use, which is free from all intrusion as that assigned to the guest at a hotel. The two relations, if not identical, bear such close analogy to each other that the same rule or responsibility should govern."

Such being the relation, and there being no evidence to sustain a finding that the plaintiff's assignor was guilty of negligence which had any relation to the loss that he sustained, I think the court below was right in reversing the judgment.

The plaintiff claims that upon an affirmance of the order granting a new trial he is entitled to judgment absolute; but, as the appeal was allowed without any stipulation as to judgment absolute, this court is without power to do more than to affirm the determination appealed from. Upon an appeal from an order of the Appellate Term reversing a judgment of the City Court and ordering a new trial, section 3191 of the Code of Civil Procedure requires that the appellant shall file a stipulation that the respondent should have judgment absolute if the order is affirmed; but there was no such provision in relation to an appeal from an order of the Appellate Term ordering a new trial in an action tried in the Municipal Court. An appeal to this court from a determination of the Appellate Term is regulated by section 1344 of the Code of Civil Procedure. The justices holding the Appellate Term could have undoubtedly required as a condition of this appeal that the appellant should file such a stipulation; but, the justices of the Appellate Term having allowed the appeal without requiring such stipulation to be filed, the appeal was regular, and, there being no stipulation for judgment absolute, we are without authority to order it.

It follows that the determination appealed from be affirmed, with costs. All concur.