## THE MUNARGO.

### DICKINSON et ux. v. MUNSON S. S. LINE et al.

District Court, E. D. New York. April 24, 1929.

Harry D. Thirkield, of New York City, for libelants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Earl Appleman, of New York City, of counsel), for claimant.

INCH, District Judge. Libelant has filed a libel against the steamship Munargo belonging to the Munson Steamship Line. He has libeled the ship on behalf of himself and his wife, alleging that on or about February 6, 1926, he and his wife were first-class passengers on board the steamship going from New York to Nassau, and that during the voyage a wrist watch belonging to his wife and $75 belonging to himself was stolen from a stateroom, occupied by himself and wife,

"in violation of respondents' obligation as a common carrier."

The sole witness for libelant was the testimony of his wife, Louise Dickinson, taken by deposition.

The burden of proof was on libelant to prove the allegations of his libel. He has entirely failed to carry this burden as to the loss of his money. He did not testify at all. Although he verified the libel, this is in effect but an affidavit and cannot be taken as evidence.

The sole testimony as to any such loss was that of his wife, who testified as follows:

"Mr. Dickinson came down later. I *think* it was that same occasion that he hung his trousers or something near the window. *I think that was the same occasion* that he had some money taken out of his trousers' pocket, but of course *he didn't take any note of* that particularly, except to tell the purser.

"Q. How much money did he lose, around $75 or $100? A. I don't think as much as that. I think he kept his bulk somewhere else. Around $15. I think Mr. Dickinson had checked some money with the purser."

This above testimony is too conjectural on which to base any decree, especially where the loser of the money fails to be a witness and there is no explanation for his absence.

As to the wrist watch, however, belonging to his wife, a different situation exists. There is no doubt but that it was stolen from her stateroom. We are not concerned at the present time with its actual value.

Counsel for libelant contends that the steamship and the duty of those in charge is the same as an inn and that of an innkeeper; that therefore, where a 'watch is shown to have been stolen from a room, a prima facie case exists. For this contention he relies upon certain cases in the state Court of Appeals. Adams v. New Jersey Co., 151 N. Y. 164, 45 N. E. 369, 34 L. R. A. 682, 56 Am. St. Rep. 616; Holmes v. North German Lloyd S. S. Co., 184 N. Y. 280, 77 N. E. 21, 5 L. R. A. (N. S.) 650. No federal case is cited by counsel for libelant.

Respondent cites the case of Elcox v. Hill, 98 U. S. 218, 25 L. Ed. 103, which is a case of a hotel and which does not seem to dispute this contention of libelant. So far as I have been able to find there is no reason to assume that counsel for libelants' contention, as a general principle, is not correct.

To be sure the proof shows that the usual notice was duly posted in the stateroom regarding the necessity for leaving valuables with the purser, etc., and that Mrs. Dickinson was aware of such notice and that Mr. Dickinson had visited the purser for that purpose, but the proof likewise shows that the wrist watch was necessary to her personal convenience and was worn by her so that under the authorities she had the right to keep such article in her stateroom regardless of such notice. Ramaley v. Leland, 43 N. Y. 540, 3 Am. Rep. 728; Walsh v. Wright, 29 Fed. Cas. 106, No. 17,115.

The real question is whether or not the loss of the wrist watch was due to the negligence of Mrs. Dickinson. This is a question of fact.

The only facts are those shown by the testimony of Mrs. Dickinson. For that reason I quote at length from her testimony. She testified (referring to her stateroom, etc.,) as follows: "The stateroom was a good room, right on the deck. I think it was the B. Deck as I remember because I know there was a *deck right outside where people walked.* It was rather rough and I was feeling quite seasick so I got to bed as quickly as possible *and tossed my wrist watch on the dresser which was right by the open window.* It was not a porthole. *It was a window.* It had a regular square window so anybody on the deck *could easily put their hand in.* I jumped into bed. I generally take my watch to bed or *I would have put it into the drawer but feeling seasick I just left it outside on the bureau by the open window.* It was about nine in the evening I think it was dark. *As a rule the drawer I have has a click and I used to put it in that* but this time I left it outside on the bureau. I remember the next morning, early in the morning I noticed somebody quite near the port hole rubbing the floor, with a sort of a black looking face, near the window but I didn't think anything more about it but when I got up later to get my watch it was gone. *It would be such an easy thing for a person to put their hand in and take it out.*

"Q. The dresser was right up—A. Absolutely. *Anybody could put their hand in.* It was *right by the open window* and *had I been feeling alright I would never have left my watch there;* but I know that some people on that boat were stealing things because other people lost quite a good deal."

Mrs. Dickinson also testified that she and her husband had been frequent travelers on the Munson line. That they had made this trip to Nassau about six times.

Considering the above testimony it is clear that the steamship company furnished a dresser with a drawer, in which Mrs. Dickinson was accustomed, when she took her

watch off, to place it. She herself says: "I would never have left my watch there (referring to the top of the dresser by the open window) had I been feeling alright."

It might as well have been placed upon the window sill.

I fail to find therefore any proof of negligence on the part of the steamship company. It is equally plain that Mrs. Dickinson was careless and that such carelessness caused the opportunity for the theft.

Assuming therefore that counsel for libelant has correctly stated the general rule as to a prima facie case, is it possible for libelant to recover for this loss where it is shown to be due to the carelessness of Mrs. Dickinson? I do not think so.

The Supreme Court has stated in the case of Elcox v. Hill, supra: "It is settled by the authorities that where the loss is occasioned by the personal negligence of the guest himself, the liability of the innkeeper does not exist. Purvis v. Coleman, 21 N. Y. 111; Cook v. Champlain Transportation Co., 1 Denio (N. Y.) 91."

It has also been held by a District Court (decree affirmed on appeal): "The proctor for the respondent has contended that the articles lost should have been deposited with the clerk for safe-keeping. On the contrary, they were just such articles as a lady of the age and circumstances of the libelant would naturally prefer to keep about her person. They were necessary to her personal convenience, and *it is not shown that she failed in taking the proper precaution for their security.*" Walsh v. Wright, 29 Fed. Cas. 106, No. 17,115. (Italics mine.)

The above case of Walsh v. Wright is somewhat similar to the case at bar, and the distinction between it and this case is in the degree of care used by the owner of the articles lost.

The cases above mentioned as being relied on by the libelant also can be distinguished on this point.

In Purvis v. Coleman, supra, the Court of Appeals of this state said: "Yet it is also the well-settled law of this state that if the plaintiff's negligence has caused or contributed to the loss or injury, an action against the carrier cannot be maintained."

In Holmes v. North German Lloyd S. S. Co., supra, the same court, through Chief Judge Cullen, says: "As to baggage of a passenger delivered to its exclusive possession, the carrier assumes the full liability of a common carrier and is an insurer. Powell v. Myers, 26 Wend. 591; Merrill v. Grinnell, 30 N. Y. 594. This doctrine obtains everywhere so far as we know. But as to baggage which remains, to some extent at least, in the personal custody of the passenger, a different rule exists, and the carrier is liable only for negligence." And, further: "The loss of the suitcases unexplained established a prima facie case of negligence and no explanation was given."

In the case at bar all the circumstances surrounding the loss was shown and they point solely to the carelessness of the owner.

In Adams v. New Jersey Co., the plaintiff "locked the door and fastened the windows of his stateroom." The court says in the course of its opinion: "Since all questions of negligence on the part of the plaintiff * * * have been disposed of by the verdict" (the verdict was in favor of plaintiff). The headnote of that case states: "A passenger steamboat company is liable as an insurer, and, hence, without proof of negligence on its part, to a passenger who has procured and paid for a stateroom, for the loss from his stateroom, without negligence on his part, of a sum of money," etc.

In the case of Ramaley v. Leland, supra, where a watch was lost, the court, in its opinion, states: "The question of negligence, and whether the plaintiff could and did bolt his door, were properly submitted to and passed upon by the jury."

I am not aware of any authority that would allow this libelant to recover solely on the theory of the steamship company being an insurer, where the proof indicates that the libelant was negligent and directly brought about or contributed to bring about this loss.

The other question raised and discussed in the briefs are not necessary to be decided.

Libel dismissed.