HELEN S. HOLMES, Respondent, *v.* NORTH GERMAN LLOYD STEAMSHIP COMPANY, Appellant.

CARRIERS — LIMITATION IN PASSAGE TICKET AS TO LIABILITY FOR LOSS OF BAGGAGE. A provision in a passage ticket issued by a steamship company limiting its liability for loss of luggage or personal effects of passengers to $100, "unless the value of the same in excess of that sum be declared at or before the issue of this contract, or at or before the delivery of said luggage to the ship, and freight at current rates for

every kind of property is paid thereon," cannot be held to apply to hand baggage intended to be taken by the passenger to her stateroom for use during the voyage, but only to such as might be delivered to the defendant to remain in its possession until delivery at the termination of the voyage, and where hand baggage delivered to the company's baggagemaster, at his direction and upon his statement that it would be sent to the passenger's room, is never delivered, the loss, if unexplained, establishes a *prima facie* case of negligence and the company is liable for the full value of the lost articles notwithstanding the failure of the passenger at the time of delivery to declare the value thereof or to pay excess freight thereon.

*Holmes* v. *North German Lloyd S. S. Co.*, 100 App. Div. 36, affirmed.

(Argued January 26, 1906; decided March 13, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 20, 1904, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph Larocque, Jr.*, for appellant. By accepting the contract ticket and failing to declare the excess value of her luggage and paying freight thereon the plaintiff precluded herself from claiming more than $100. (*Steers* v. *L., N. Y. & P. S. S. Co.*, 57 N. Y. 1; *Wheeler* v. *O. S. N. Co.*, 72 Hun, 5; *Belger* v. *Dinsmore*, 51 N. Y. 166.) The fact that the agreement does not specifically refer to losses occasioned by the negligence of the carrier does not deprive the defendant of the benefit of the valuation clause. (*Condict* v. *G. T. R. Co.*, 54 N. Y. 500; *Tewes* v. *N. G. L. S. S. Co.*, 42 Misc. Rep. 148; *Hart* v. *P. R. R. Co.*, 112 U. S. 331; *The Kensington*, 183 U. S. 263; *Magnin* v. *Dinsmore*, 62 N. Y. 35; *Rowan* v. *W., F. & Co.*, 80 App. Div. 31; *Ghormley* v. *Dinsmore*, 2 J. & S. 36; *North German Lloyd* v. *Heule*, 44 Fed. Rep. 100; *Bermel* v. *N. Y., N. H. & H. R. R. Co.*, 62 App. Div. 389; *Zimmer* v. *N. Y. C. & H. R. R. R. Co.*, 137 N. Y. 460.)

*W. C. Carroll* and *Loran J. Lewis, Jr.*, for respondent. The clause in the ticket issued to the plaintiff limiting the liability for the loss of luggage to $100 does not apply to hand luggage to be in the possession of the passenger, and the mere fact of the non-delivery of the two suit cases in question is *prima facie* evidence of negligence. (*Wheeler* v. *O. S. N. Co.*, 125 N. Y. 155; *Tewes* v. *N. G. L. S. Co.*, 42 Misc. Rep. 148; 104 App. Div. 619.) The regulations in the ticket should be strictly construed. (Bishop on Cont. §§ 410, 411; *Mynard* v. *S., etc., R. R. Co.*, 71 N. Y. 180; *Jennings* v. *G. T. Ry. Co.*, 127 N. Y. 438.) In the case of a passenger upon a steamship, after the company has issued its ticket and furnished a stateroom for the passenger, and receives the passenger and his personal effects, the relationship of innkeeper and guest at once arises. (*Lincoln* v. *C. M. S. S. Co.*, 30 App. Div. 752.)

Cullen, Ch. J. This action was brought to recover damages for the loss of two suit cases under the following circumstances: The plaintiff and her daughter were cabin passengers in one of the appellant's steamers sailing for Europe on the 17th of September, 1903. The passage ticket was purchased some twenty days prior to the date of sailing and from that time was in the possession of the plaintiff. The ticket contained the following provision printed on its face: "It is mutually agreed that this ticket is issued by the North German Lloyd S. S. Co. and accepted by the passenger on the following conditions: * * * It is also agreed that neither the shipowner nor the passage broker or agent nor the ship, is in any case liable for loss of or injury to or delay in delivery of luggage or personal effects of the passengers beyond the amount of one hundred dollars ($100), unless the value of the same in excess of that sum be declared at or before the issue of this contract, or at or before the delivery of said luggage to the ship, and freight at current rates for every kind of property is paid thereon." On the day of sailing the plaintiff with her daughter and husband drove to the

defendant's pier in Hoboken; her baggage was taken from the cab, and two trunks were delivered to the baggage master and receipts taken therefor. The plaintiff and her husband started to carry the suit cases to her cabin or stateroom when they were directed by the baggage master to place the suit cases with the other baggage and he stated that they would be carried to the room. The baggage master also told her that no receipts were given therefor. The suit cases were never delivered to the plaintiff at her cabin or elsewhere, but were lost. The value of the property was stipulated at six hundred dollars. The defendant did not deny its responsibility for the loss of the property, but contended that under the provision of the passage ticket hereinbefore recited its liability was limited to one hundred dollars and that is the only question presented by this appeal, the trial court having awarded the plaintiff judgment for the full value of the lost articles.

The ground on which the decisions of the courts below have proceeded was that the plaintiff was not obliged to declare the value of her baggage until after it was actually placed upon the ship and that by its loss before that time she was prevented from making such a declaration. We place our decision on a different ground. We are of opinion that the provisions of the passage ticket did not apply to baggage intended to be taken by the passenger to her stateroom for use during the voyage, but only to such as might be delivered to the defendant to remain in its possession until the termination of the voyage. The difference between the two classes of baggage in respect to a carrier's liability therefor has given rise to many conflicting decisions in the courts, and the law thereon differs in different jurisdictions. As to baggage of a passenger delivered to its exclusive possession, the carrier assumes the full liability of a common carrier and is an insurer. (*Powell* v. *Myers*, 26 Wend. 591; *Merrill* v. *Grinnell*, 30 N. Y. 594.) This doctrine obtains everywhere so far as we know. But as to baggage which remains, to some extent at least, in the personal cus-

tody of the passenger, a different rule exists, and the carrier is liable only for negligence. This distinction generally prevails, though there is conflict in the authorities as to when the personal control exercised by the passenger excludes a possession by the carrier and relieves the carrier from its strict liability. The distinction prevails in this state in the case of railroads, and it has been held that a company is not liable for the theft of an overcoat taken from a seat in a car, nor for articles stolen from the berth of a sleeping car, except in case of negligence. (*Tower* v. *Utica & Schenectady R. R. Co.*, 7 Hill, 47; *Carpenter* v. *N. Y., N. H. & H. R. R. Co.*, 124 N. Y. 53.) In the case of a steamboat or steamship which provides cabins or staterooms in which the passenger is expected to deposit the baggage needed for his voyage and to retire to rest, the responsibility of the carrier is that of an innkeeper, and the company is liable for moneys stolen from the clothes of the passenger which he has taken off on retiring to sleep. (*Adams* v. *New Jersey Steamboat Co.*, 151 N. Y. 163.) This principle would equally control a loss of any other property of the passenger stolen from his stateroom. We think that the agreement contained in the passage ticket was not intended to relieve the defendant from liability for baggage of this character. In terms it purports to include not only the luggage of the passenger, but his personal effects. Surely it was not expected that the passenger should make a declaration of the amount of money he had on his person or the value of the watch and jewelry he carried or of the clothes he was wearing, of his overcoat and his wraps. Had the suit cases not been lost it is entirely possible that the plaintiff might before dinner time or at least the next morning have substituted a dress and other articles of apparel from the suit cases for those she wore going on board the steamer. Thus the contents of this baggage would have been constantly shifting during the voyage and probably the value equally changing. The language of the ticket, which is to be construed against the carrier and every ambiguity in which is to be resolved in favor of the passenger, supports the view that it

was not intended to include baggage taken by the passenger in his cabin for use during the voyage. It provides that if the value of the baggage and personal effects of the passenger exceed one hundred dollars, freight at current rates shall be paid thereon, and also that baggage shall be distinctly labeled, and in case of neglect so to do the company shall not be liable for loss or delay in its delivery. Certainly it could not have been expected that the personal effects of the passenger taken into his cabin or stateroom, the use of which changed from day to day or during the same day, should be paid for as freight or those articles distinctly labeled. The conduct of the baggage master equally confirms this interpretation of the provision. Receipts were given for the trunks, not for the cabin baggage.

It is unnecessary to determine whether the liability of the defendant in what may be termed the incidental service of carrying the passengers' hand luggage from the wharf to the stateroom was that of an insurer or merely for negligence. The loss of the suit cases unexplained established a *prima facie* case of negligence and no explanation was given. The service thus rendered was not a voluntary one on the part of the employee outside of the scope of his duty, for it is the common custom of the stewards and other employees of an ocean steamer to carry the cabin baggage of the passengers on and off the boat.

The judgment appealed from should be affirmed, with costs.

Gray, J. (dissenting). I am unable to concur with the chief judge's opinion. It ignores, or nullifies, a contract of the parties and reaches its conclusion by importing into their unqualified agreement a restriction upon its general terms. The contract of carriage is perfectly plain, and the agreement in question is conspicuously and legibly printed upon the ticket and is quite unambiguous. The contract was to carry the plaintiff and her children from New York to Cherbourg, in the first cabin of one of defendant's steamers, sailing at a specified date, for the sum of $200. Immediately following,

in heavy type, are the words that "it is mutually agreed that this ticket is issued by the North German Lloyd Steamship Co. and accepted by the passenger on the following conditions." Equally legible among the five conditions referred to is the one that "it is agreed that neither the ship owner * * * nor the ship is in any case liable for loss * * * of luggage or personal effects of the passengers beyond the amount of one hundred dollars, unless the value of the same in excess of that sum be declared * * * at or before the delivery of said luggage to the ship," etc. That was an agreement between the parties that "*in any case*" of liability for a loss, the valuation of the passenger's "luggage, or personal effects," was fixed at $100 ; but it might be declared to be in excess of that sum up to the moment of plaintiff's delivery to defendant. Language could not more comprehensively, I think, express an agreement between the defendant and its passenger with respect to that feature of their relations. If the agreement was not to be taken so positively, as to the limit of the defendant's liability for the passenger's loss ; if any exception was intended to the application of the agreement, it would have been very easy and very natural to have so stipulated. The passage agreement was deliberately made ; there was ample opportunity for the plaintiff to regulate her actions accordingly and she had been a frequent passenger by this line.

By accepting the ticket for the intended passage, she declared her acceptance of its terms and the relative rights and agreements of the parties became obligatory. The agreement as to the valuation of the luggage was for their mutual advantage. It guarded the defendant against fraud and its price for the carriage, presumably, was measurably based upon the limited liability. It advantaged the plaintiff; because, while liquidating the value of her portable effects "in any case of loss," it allowed her to declare, up to the time that the defendant assumed any responsibility therefor, a greater value. An undue importance seems to be attributed by Judge Cullen to the language "freight at current rates to

be paid" on any excess in value cver $100. The term
"freight," however, is but the technical term to express the
price to be paid for the carriage, or transportation, of goods
and was the phraseology proper to be used in an agreement to
pay for any increased assumption of liability over what had
been fixed by agreement. The ticket was intended to regu-
late the mutual rights and obligations of the parties from the
moment that relations commenced between them and no one
can, in my opinion, with reason, or with justice, read its plain
terms with other effect. Those relations commenced and the
passage contract became operative, when the plaintiff arrived
at the defendant's pier and claimed the right to have herself
and her effects carried. She chose to surrender her effects to
the defendant's servants. She was not obliged to do so and
she might have retained the custody of the suit cases until
deposited where she should choose to deposit them. She did
not so elect. When she delivered them to the baggage master,
she delivered them to the defendant, and how could it be
material to the contractual relation, or affect its terms, whether
its custody and care were for the whole voyage, or for a shorter
time? The moment the defendant became responsible for
them at all, the liability, necessarily, was measured by the
value theretofore agreed upon; if not then otherwise declared.
Is it just to hold that she was excused from declaring to the
defendant's agent, when delivering her effects into his
custody, that they were of considerable value and in excess
of $100? Was the defendant not to be apprised, in fair
dealing, of the greater value? If, as we must assume,
the price of the passage was proportioned to the liability
agreed upon, then there is no justice in allowing the
plaintiff to be paid a larger value for her suit cases. We
may apply the observation in *Hart* v. *Penna. R. R. Co.*,
(112 U. S. 331), though the carriage contract there related
to a shipment of horses, that "it is just to hold the shipper
to his agreement, fairly made, as to the value, even where
loss or injury has occurred through the negligence of the
carrier. The effect of the agreement is to cheapen the freight

and secure the carriage, if there is no loss; and the effect of disregarding the agreement, after a loss, is to expose the carrier to a greater risk than the parties intended he should assume. The agreement as to the value, in this case, stands as if the carrier has asked the value of the horses and had been told by the plaintiff the sum inserted in the contract." It must be borne in mind that this contract did not seek to exempt the carrier from negligence; but, to the contrary, contemplated the possible case of negligence causing loss and liquidated the damage in such event at a sum named. There is no analogy with the innkeeper's liability. It was not like the theft of an article from the cabin of the passenger. It was, purely, a case of the failure of the carrier to adequately care for the luggage delivered to it. A passenger may take all of his luggage in his cabin; or he may send a part of it to the ship's hold. In either case, he will intrust all, or only some portions, to the carrier and how can it affect the question of the latter's liability, whether the delivery by it to the passenger is to be made at the end of the voyage, or after the voyage has commenced? To say that there may be a hiatus in the relation of a carrier to its passengers and that there can be an interval of time, when, notwithstanding that the luggage had been delivered to the former, no contractual relation existed between the parties, is as illogical, as it is unreasonable. Whenever delivered to the carrier, upon the inception of the contractual relation, the obligation of the latter attaches and requires a delivery to the passenger at some time before, or at, the end of the voyage, as arranged.

In *Steers* v. *Liverpool, N. Y. & P. S. S. Co.*, (57 N. Y. 1), a trunk, which the plaintiff had delivered to the defendant, was never found. Her passage ticket contained the limitation, in the case of a loss of luggage, that not "in any event, shall the passenger demand beyond the sum of fifty dollars ($50), at which said Baggage is valued, unless a bill of lading or receipt be signed therefor, specifying the articles and their respective values." The defendant was held liable for the loss of the trunk; but the amount of the recovery was

limited to the specified sum of fifty dollars. In that case it appeared that the plaintiff had not even seen her ticket until she arrived at Queenstown; but that was not considered to be of importance. The opinion of the court pointed out the difference between the purchase of such a ticket and that of a railway ticket, or the taking of an express company's receipt, and held the plaintiff's ticket to be a contract between the parties, mutually assented to, touching the voyage in question and controlling. In *Wheeler* v. *Oceanic Steam Naviga- tion Co.*, (72 Hun, 5; affd., 149 N. Y. 576), the plaintiff sued for the value of a certain package, which the defendant had received from her and had stated to her it had placed upon the steamer; but which was never, subsequently, delivered to her. Her passage ticket contained an agreement limiting the company's liability to an amount not exceeding £10, which she said she had never noticed; but it was held that the amount of her recovery should be limited to the sum stated in the ticket, which constituted a contract between the parties.

However we look at the present case, we find a contract, which is quite unobjectionable. The fact is that the parties agreed as to the measure of the defendant's liability, "*in any case*" of a loss of luggage or personal effects, and it is futile to generalize upon the situation and to conclude that some- thing else was meant. Neither the nature of the liability nor the cause of the loss, could have any effect upon the agreed value of the luggage in the event of its loss.

For these reasons, I vote for the reversal of the judgment and that a new trial should be ordered.

Edward T. Bartlett, Haight and Chase, JJ., concur with Cullen, Ch. J.; O'Brien and Werner, JJ., concur with Gray, J.

Judgment affirmed.