## KNIERIEM v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. November 3, 1911.)

CARRIERS (§ 408*)—PASSENGERS—LOSS OF PROPERTY IN WRECK—JURY QUESTION.

In an action against a railway company, *held*, under the evidence, a jury question whether a passenger lost $1,180 in a wreck, and whether that was a reasonable amount for the journey he had in contemplation.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 408.*]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Joseph A. Knieriem against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

See, also, 129 N. Y. Supp. 1131.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and CLARKE, JJ.

Charles C. Paulding (Robert A. Kutschbach, of counsel), for appellant.

F. Howard Collins (Herman N. Hansen of counsel) for respondent.

CLARKE, J. This is an action by a passenger on one of defendant's trains to recover for the loss of $1,180 in money and a gold watch of the value of $50 lost or destroyed in a railroad accident near Pawling. The law of this case was settled, so far as the Trial Term and this court are concerned, upon the former appeal. 109 App. Div. 709, 96 N. Y. Supp. 602. Upon the former trial the complaint has been dismissed before the taking of any evidence. We said:

"The dismissal of the complaint was error. The evidence should have been taken, and the questions thereon arising would have been the negligence of the defendant, the freedom from contributory negligence of the plaintiff, and whether or not the watch was a 'necessary, convenient, and ornamental, reasonable, personal chattel,' and whether the money or any part thereof came within the definition of a reasonable and suitable amount for the journey contemplated."

One of the objections raised in the dissenting opinion, that there was no allegation in the complaint that the money lost was being carried to defray the expenses of the journey of the plaintiff or his wife, or that it was necessary for that purpose, has been met by an amendment of the complaint allowed by the Special Term upon proper terms. The trial court tried the case according to the rules laid down by our opinion. The main part of the appellant's brief is confessedly a reargument of the case as formerly presented. The sole question to be now considered is the claim that:

"The verdict should be reversed on the ground of the inherent improbabilities of the plaintiff's story."

The defendant's negligence and its responsibility for the accident is not questioned, and could not be. The road was washed out, the

rails spread, the cars were derailed and overturned, and defendant made no attempt to prove due care on its part. Indeed, it appeared in the evidence that defendant had settled with plaintiff's wife, who had three ribs broken, and had lost four rings, a watch, and a silver bag of her own, which were in the handbag alleged to have been lost. Of course, there could be no contributory negligence, so far as the derailment of the train was concerned. Is the verdict, based on the finding of the jury, first, that plaintiff had in his possession $1,180 which was lost or destroyed at the time of the accident, and, second, that that was a reasonable sum for the journey he had in contemplation, against the weight of the evidence?

I think there was a pure question of fact for the jury. Plaintiff testified that he had been a saloon keeper in Jersey City; that he had sold out; that he was worth $8,000; that he had sent his furniture over to his mother's; that he had packed two trunks, and left them with a friend to be called for; that his wife was visiting her aunt at Amenia, N. Y.; that, intending to start on a four months' pleasure trip, he drew $1,180 out of the bank and went to Amenia to get his wife. He produced his bank book, and attempted to show that fact by it. His counsel asked:

"What bank did you draw this $1,180 from?"

The question was objected to, and sustained. Afterwards plaintiff testified:

"I have got the passbook of the bank, showing that I drew this money out before I went to Amenia. Q. I ask you if this is the passbook (exhibiting)? Defendant's Counsel: Objected to as incompetent, irrelevant, and immaterial. The Court: I do not see why that is competent, or why it is necessary for you to show where you got the money; no question but what he had it."

The wife testified that her husband brought the money up and gave it to her, and she counted it and put it in her bag, and she saw it there the next morning when they started on the train. It seems to me the defendant is estopped by its own conduct from questioning the fact that the plaintiff did have in his possession at that time the amount which he claims.

Appellant claimed upon the argument that all of its train employés went around getting names of people who were injured and had lost property, and that this plaintiff's name and that of his wife did not appear. Examination of the evidence shows that none of the employés were in a position to know who were injured or what was lost —and some of them even gave the impression by their testimony that no accident had taken place—with the exception of the conductor, who, testifying years afterwards, from written memoranda to a large number of passengers, could not say that the memoranda produced were all that he had turned in to the company, and had, of course, no independent recollection of the names reported. On the other hand, plaintiff says that shortly after the accident he spoke to a man at the rear of the train, who looked like a railroad man, who had gold buttons and a blue suit, and who held up a number of pocketbooks, and asked him if he could see a big hand bag that was lost in

the same car; that this man went in the car and looked, and said he could not find it; that he told the conductor at the wreck that he had lost money, and that he also spoke to Mr. Collins, a lawyer, upon the relief train, and asked him to report it for him "right there and then," and that Collins told him he reported it; and two days later Mr. Collins did write a letter to the company. This letter seems to me very significant, and to establish entire good faith. It was dated on August 13th, the accident having taken place on the 11th:

"Mr. Joseph A. Knieriem has authorized me to report to you his following loss claim on the 11th intent. He was a passenger on your train, Harlem Railroad, wreck near Pawling, and lost in such wreck, middle car, left-hand side, which was turned bottom up, the following, which was in a silver bag carried by his wife: $1,180 in money, consisting of $20 bills and two $100 bills; silver bag containing the same; also four rings and two gold watches; also a silk dress and hat and umbrella were either lost or destroyed. Please report to me immediately if same be found, and deliver to no one except by written order of Mr. Knieriem. His wife, Mary C. Knieriem, was injured in the wreck; but the extent of same has not yet been reported to me."

That, it will be noted, was not a demand upon the company, but was a notice that the property had been lost, and, if found, should be returned. It was made promptly after the event. The amount is peculiar, and, coupled with the offer of proof of the bank book, which the defendant kept out, conclusively established, so far as this case is concerned, it seems to me, that plaintiff did have the money. At least, the defendant is fairly estopped from questioning it. Plaintiff further testified that he had gone to Amenia to get his wife, and had entered upon a contemplated four months' trip with her, intending to go first to Washington, then to Old Point Comfort, Norfolk, Baltimore, Philadelphia, Atlantic City, and Lakewood; that it was his intention as soon as he got comfortably settled in the hotel in Washington to send for his trunks. His wife corroborated him.

He did not, as matter of fact, take this trip, because the money was lost, and because his wife was badly injured; but he did not go into business, or do anything for a year after. If, as matter of fact, he was entering upon a trip of four months, the jury were entitled to say, that, for two people traveling and living in hotels for that space of time, the amount of money provided was reasonable. He was not limited to the fare necessary to get him from Amenia to New York. A continuing journey was contemplated at that time. Nor was he required to provide himself with a letter of credit to open bank accounts in the various cities, or do any of the other things to secure the necessary funds suggested by the learned counsel for the appellant. He was entitled to do as he pleased, and to take such sums as were reasonable for his sojournings, for his expenses, his fares, possible sickness, pleasure, and entertainment. The reasonableness of the sum was a question of fact, and not a law.

The case was properly submitted to the jury. They saw and heard the witnesses, who were submitted to a grueling cross-examination; and, as trial by jury of questions of fact continues to be the law of this state, I find no justification for disturbing this verdict. This court settled the law of the case, and the jury have now passed upon the facts.

In Hasbrouck v. New York Central, 202 N. Y. 363, 95 N. E. 808, the Court of Appeals reasserted the doctrine of the cases cited in our former opinion, and allowed a recovery to the amount of $1,200, the value of rings taken from a grip; Vann, J., saying:

"The jewelry was adapted to her tastes, habits, and standing, as the court found upon sufficient evidence, and the amount of money was no greater than was found to be reasonable and prudent. * * * The contract to transport the plaintiff carried with it the duty of transporting a reasonable amount of hand baggage, such as is commonly taken by travelers for their personal use; the quantity and value depending upon station in life, object of the journey, and other considerations. Merrill v. Grinnell, 30 N. Y. 594; Carlson v. Oceanic Steam Navigation Co., 109 N. Y. 359 [16 N. E. 546]; Railroad Co. v. Fraloff, 100 U. S. 24, 29 [25 L. Ed. 531]; Ray on Negligence of Imposed Duties, 561, 564; Elliott on Railroads, 2601, 2605. As was said by Chief Justice Cockburn in Macrow v. Great Western Railway Co., Law Rep. 6 Q. B. 612, 621: 'Whatever the passenger takes with his for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities, or to the ultimate purpose, of the journey, must be considered as personal luggage.'"

It is true the court went on to say:

"We appreciate the danger that fraud may be practiced upon railroad companies by unscrupulous passengers, and the necessity for clear proof and conservative action by the courts."

But we have in the case at bar undisputed evidence, the prompt demand, and the refusal by the defendant to permit the highest proof, to wit, the passbook, so that it seems to me our previous opinion is in conformity with the last decision of the Court of Appeals.

The judgment and order appealed from should be affirmed, with costs and disbursements to the respondent.

LAUGHLIN and MILLER, JJ., concur.

INGRAHAM, P. J. I do not concur in the affirmance of this judgment, as I think the verdict of the jury that this sum of money was taken by the plaintiff with reference to the immediate or the ultimate purposes of the journey of the plaintiff and his wife at the time of the accident is not sustained by the evidence. The plaintiff's wife had been spending several days at Amenia visiting a relative. Plaintiff started from New York upon one of the defendant's trains on a Friday, purchasing a ticket to Amenia and return, and on the following Monday morning he and his wife returned to New York on the train which met with the accident which resulted in the loss of this money. I agree with Mr. Justice CLARKE that the question as to whether the plaintiff had, or had not the money in his possession at the time of the accident was a question for the jury; but I think the immediate journey which the plaintiff and his wife were taking at the time ended at New York, and, of course, the sum of $1,180 had no relation to that journey. It is true that the plaintiff and his wife both testified that they intended to take a four months' trip through the southern states after they arrived a New York; but it seems to me that was an entirely separate and independent journey from that upon which the plaintiff was engaged at the time of the accident.

The total personal baggage of the plaintiff at the time was that required for a trip to Amenia to, spend Sunday, and it was entirely inconsistent with the idea of an extended trip of four months. Plaintiff and his wife were passengers on the local train from Amenia to New York, making no connections with any other train. She had purchased a ticket for that trip. He had no intention of taking any particular train at New York, but said that he intended to go to the Pennsylvania Railroad and take such train, as he should then find would meet his purpose. His return from Amenia was a returning home from the journey upon which he had started on the preceding Friday; and when he started from New York on the Southern trip he was commencing a new journey, which had no relation to his trip from New York to Amenia and return. It seems to me clear that the trip from New York to the south was not, at the time when he left Amenia, a journey within the meaning of the rule making a common carrier liable for a loss of personal luggage, and therefore I think that the verdict of the jury that this money was a reasonable amount for a traveler to carry with reference to the, immediate necessities or the ultimate purpose of the journey in which he was engaged at the time of the accident was against the evidence.

I therefore dissent.

McLAUGHLIN, J., concurs.