THE CRETIC.

(District Court, D. Massachusetts. August 5, 1914.)

No. 789.

1. SHIPPING ⬥163—CARRIAGE OF PASSENGERS—CONTRACT MADE BY TICKETS.
    That a purchaser of steamship tickets, who was a man of education and an experienced traveler, did not read the tickets, although they were bought 13 days before the sailing date, cannot enlarge his rights thereunder; but he is bound by the contract thereby made so far as its terms are not invalid as against public policy.
    [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 530–532; Dec. Dig. ⬥163.]

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. SHIPPING ⊚→167—PASSENGER'S EFFECTS—LIMITATION OF LIABILITY.**

Where a steamship ticket includes two or more passengers, a provision therein limiting the liability of the shipowner in case of loss of baggage to $100 does not mean the entire liability, but the liability to each passenger; but the limitation applies not only to the shipowner, but to the vessel as well.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 553–555; Dec. Dig. ⊚→167.]

**3. SHIPPING ⊚→167—PASSENGER'S EFFECTS—LIMITATION OF LIABILITY.**

There is a distinction between a provision in a steamship ticket limiting liability for loss of baggage and a mere notice of such limitation printed on the ticket; in the latter case the notice must be brought home to the passenger to be effective, but when a part of the contract it is necessarily accepted with the ticket, and the passenger is bound thereby unless invalid, as contrary to public policy.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 553–555; Dec. Dig. ⊚→167.]

**4. SHIPPING ⊚→167—CARRIERS — PASSENGER'S EFFECTS—CONTRACT LIMITING LIABILITY—VALIDITY.**

A provision in a steamship ticket limiting the liability of the carrier to $100 for loss of baggage, unless a higher value is declared and additional payment made, is reasonable and valid.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 553–555; Dec. Dig. ⊚→167.]

In Admiralty. Suit by Hiram Bingham and Alfreda Bingham against the steamship Cretic; Oceanic Steam Navigation Company, Limited, claimant. Decree for libelants.

Brandeis, Dunbar & Nutter, of Boston, Mass., for libelant.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimant.

## Findings of Fact.

MORTON, District Judge. This is a libel in rem, brought by Hiram Bingham and his wife, Alfreda, against the Cretic, to recover for the loss of a trunk and contents. The facts are as follows:

The libelant Hiram Bingham purchased, on or about June 15, 1913, at New Haven, from the claimant's agent there, a ticket for three first-class passages and one one-half first-class passage, for transportation of himself, his wife, their son, and a child, with baggage, from Boston to Genoa, Italy, on the Cretic, sailing from Boston June 28, 1913. The trunk in question formed part of the personal baggage of Prof. and Mrs. Bingham. It was delivered on board the steamer Cretic at Boston on the day of her sailing, and was there seen on her deck by the libelant. It had been tagged by him for the baggage room on the steamer, and he at that time changed the marking on the tag from "baggage room" to "stateroom." After having done this, he saw the trunk carried aft by one of the stevedores. The trunk contained jewelry worth $1,725 which belonged to Mrs. Bingham, and clothing and personal effects belonging to Prof. and Mrs. Bingham worth $275, a total value of $2,000. It was never delivered to the libelants, and never seen by anybody connected with this case after being carried aft as above stated. Prof. Bingham advised the officers of the ship within

a few days that the trunk had not been delivered to his stateroom, and search was made over the vessel, but without success. He kept watch of the trunks that went ashore at the various ports at which the steamer touched before reaching Genoa, and did not see the trunk among the baggage put off at those places. He watched the baggage at Genoa, and did not see the trunk there. He promptly made claim upon the local agent of the line for the loss of it and its contents. In view of the precautions taken by the claimant to prevent baggage, after having been put on board at Boston, from being taken ashore before the steamer sailed, it seems improbable that the trunk was removed from the steamer at that place. It was undoubtedly lost by the negligence or willful misconduct of some officers or members of the Cretic's crew, after the voyage began.

A copy of the material parts of the ticket is annexed.[1] The defense principally relied upon is that, by reason of the provisions contained in the ticket, limiting the extent of liability, the steamer is not liable for the value of the jewelry lost. These provisions are found in the fourth, fifth, and eighth clauses of the ticket, preceding the signature of the company, and plainly form part of the contract under which the libelants were carried. Prof. Bingham did not read the ticket; but he was an experienced traveler, and he was aware that steamship tickets frequently do contain provisions limiting liability. He acted as agent for his wife in all matters concerning her transportation and the shipment of her baggage and effects. He paid to the claimant the sum specified in the ticket and accepted the ticket, which was issued to him. He is a man of much education and large experience as a traveler, a professor in Yale University.

## Opinion.

[1] The fact that Prof. Bingham chose to accept the ticket without reading it, or familiarizing himself with its provisions, does not enlarge the libelants' rights in this suit. They are to be held to the terms of the contract which they accepted, so far as those terms are not invalid as against public policy.

[2, 3] Paragraph 5 of the ticket means that the liability of the company or the vessel to each of the passengers referred to in the ticket for the loss of baggage shall not exceed $100. It does not, as contended by the libelant, limit the entire liability for loss of baggage under the ticket to $100. Nor does the limitation apply only to the shipowners, and not to the vessel itself; it relieves both. The Queen of the Pacific, 180 U. S. 49, at 51, 21 Sup. Ct. 278, 45 L. Ed. 419. There is a well-recognized distinction on this point between mere notices by the carrier, printed upon the ticket or otherwise given to the passenger, that the carrier will not be liable beyond a certain amount, and provisions to that effect contained in the contract of carriage itself. The former are not valid unless distinctly brought home to, and accepted by, the passenger; the latter, entering into and forming part of the contract, are necessarily accepted with the ticket, unless repugnant to public policy. The Majestic, 166 U. S. 375, 384, 17 Sup. Ct. 597, 41 L. Ed.

---

[1] See note at end of case.

1039; Bachman v. Clyde S. S. Co., 152 Fed. 403, 81 C. C. A. 529; The Morro Castle (D. C.) 168 Fed. 555; Hohl v. Norddeutscher Lloyd, 175 Fed. 544, 99 C. C. A. 166.

[4] It seems to me that the limitation of liability to $100 per passenger was valid and was binding upon the libelants. Presumably this limitation entered into the price charged for the ticket. Hart v. Penn. R. R. Co., 112 U. S. 331, 340, 5 Sup. Ct. 151, 28 L. Ed. 717. If the passenger desired further protection, he could obtain it by declaring a greater value and paying thereon, or by shipping under a bill of lading as provided in the ticket, clause 5. These provisions offered the passenger a choice, which seems not unreasonable, either of letting his baggage go at the valuation of $100, or of declaring a higher value and of paying an additional sum for the additional liability undertaken by the carrier. The Kensington, 183 U. S. 263, 277, 22 Sup. Ct. 102, 46 L. Ed. 190. Even though Rev. Stats. § 4281 (Comp. St. 1913, § 8019), does not apply to baggage like this trunk, for which no bills of lading are taken (La Bourgogne, 144 Fed. 781, 786, 75 C. C. A. 647), it certainly shows legislative recognition of the wisdom of allowing ocean carriers to protect themselves against claims for undeclared jewelry in baggage or freight, a thing so plainly just and well settled as to need no elaboration. Calderon v. Atlas S. S. Co., 170 U. S. 272, 278, 18 Sup. Ct. 588, 42 L. Ed. 1033.

It is said for the libelants that the steamer is liable as bailee, irrespective of her liability as carrier, and that her liability as bailee is not limited by the provisions in the ticket. This is mere verbalism. The trunk was delivered to the steamer, and accepted by her as baggage belonging to persons traveling under the ticket before referred to; and the rights and liabilities of the parties are determined thereby. Cases like The Minnetonka, 146 Fed. 509, 512, 77 C. C. A. 217, and Holmes v. North German Lloyd S. S. Co., 184 N. Y. 280, 77 N. E. 21, 5 L. R. A. (N. S.) 650, in which the property lost was not delivered as baggage, are plainly distinguishable.

Each libelant is entitled to a decree for damages in the sum of $100, with costs.

### NOTE.

New York, June 6, 1913.

This ticket is good for first-class passage of 3 adults, 1 child, ——— serv ants, ——— infants, by the British steamship Cretic, to sail from Boston for Genoa on June 28/13, unless prevented by some unforeseen circumstances, upon the following conditions, which are agreed upon between the carrier and each passenger, viz.: At 4 p. m.

\* \* \* \* \* \* \* \* \* \* \*

4. Neither the shipowner, agent, master, or passage broker shall be liable as carrier in any form or manner for any article specified in section 4281 of the Revised Statutes of the United States, shipped or taken on the vessel by any passenger in any baggage, unless the passenger at the time of such lading shall give to the shipowner, master, agent, clerk, or broker of the vessel a written notice of the true character and value thereof, and, if required, produce the same for inspection, and have the same entered on a bill of lading therefor, or unless such articles be delivered into the personal custody of the purser of the vessel, and the true character and value thereof stated in writing; and in the event of such deposit, neither the vessel, nor her owner, master, agent, or passage broker, shall be liable in respect of the ar-

ticles deposited, beyond the sum of $100, which sum it is mutually agreed that the value of the articles does not exceed, unless value in excess of that sum be declared, and a further charge thereon be paid or tendered in advance on the excess value at the rate of 1 per cent. Neither the shipowner, master, agent, nor passage broker shall be liable for the loss of or damage to any such article when arising from any of the causes enumerated in clause 3, nor in any event beyond the value and according to the character thereof notified and entered as aforesaid, nor except as may be provided by the bill of lading, if a bill of lading is issued, or by the certificate of deposit, if the property be deposited.

5. In the event of the loss of, or damage to, or delay in the delivery of, the baggage of any passenger, carried under this contract, or a part thereof, for which the shipowner may be liable, it is, subject to the preceding clause hereof, mutually agreed that such liability shall not exceed the sum of $100, which sum it is agreed the value thereof does not exceed, and to which value the shipowner, subject to clause 6, undertakes to carry the same free of charge, unless the passenger, before embarkation under this contract, shall declare in writing to the shipowner, agent, or passage broker the true value of such baggage, if in excess of $100, and shall pay or offer to pay in advance, on the value thereof in excess of $100, at the rate of 1 per cent, or at his option shall ship the excess baggage as freight under a bill of lading.

6. If the baggage, without reference to its value, exceeds 20 cubic feet in measurement for each passenger, the passenger shall pay for each cubic foot in excess thereof the sum of 25 cents.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

8. All responsibility of the shipowner, agent, or passage broker hereunder shall be limited to that period only while the passenger and his baggage are on board the transatlantic ocean steamship or its tenders. All other transportation hereunder is included for the passenger's convenience, and will be at the passenger's risk, subject to the ordinary conditions of carriage of each railway or transportation company employed for the purpose, or to any special conditions required by them.

9. No claim under this ticket shall be enforceable against the shipowner or his property, or the agent or passage broker, unless notice thereof in writing, with full particulars of the claim, be delivered to the shipowner or agent within three days after the passenger shall be landed from the transatlantic ocean steamer at the termination of her voyage, or in case of the voyage being abandoned or broken up within seven days thereafter.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

For and on behalf of the Oceanic Steam Navigation Company, Limited.
$562.50.                                White Star Line,
                                        Per Sweezey & Kelsey.