JOHN VAN DIKE, Plaintiff, *v.* THE PULLMAN COMPANY, Defendant.

City Court of New York, Kings County, March 5, 1932.

*Alfred C. B. McNevin,* for the plaintiff.

*Alexander & Green,* for the defendant.

GOLDSTEIN, J.   The plaintiff, a student at Notre Dame University in South Bend, Ind., and residing in New York city, sues for the value of a leather traveling or kit bag and its contents.   On the morning of September 15, 1930, he arrived at the station of the Delaware, Lackawanna and Western railway at Hoboken, N. J., to take a special students' train about to depart for South Bend, Ind.   His mother and a friend of his, one Faippers, came there with him to see him off.   He had purchased both railway and Pullman accommodations.   The plaintiff was carrying a large bag — the one involved in this suit — and Faippers a small one.   As the plaintiff and his party walked through the gate and down the platform where the special train was standing, a porter wearing the regular porter's uniform and a hat with a brass shield, whereon was inscribed " Pullman," asked of the plaintiff the number of the Pullman car to which he had been assigned.   Upon receiving that information the porter while standing at the foot of the steps leading into the car assigned to the plaintiff, took the bags from the plaintiff and Faippers.   He turned about and mounted the steps into the car with the bags.   The plaintiff remained on the platform chatting with his mother and Faippers for about five minutes, and then also went up into the car, but upon reaching his assigned berth he failed to discover the larger bag — the one he had himself handed to the porter.   The smaller one was found in its proper place.   He asked the porter, Miles, about it almost at once and both commenced a search for the bag.   The conductor, Tyne, and Passenger Agent Webber also made a search throughout the cars of the train, but the plaintiff's bag was not found.   Another porter referred to by Miles was not produced at the trial.

Plaintiff brought suit for the value of the bag and its contents. The Pullman Company disclaims liability and urges a dismissal of the complaint on four grounds, viz.: (1) That the plaintiff has

failed to sustain the burden of proving a delivery to the defendant of the bag and its contents; (2) that even though there was such a delivery, the legal relation resulting was only that of a quasi bailment for a particular purpose, to wit, to take the bag and put it in the plaintiff's space in the Pullman car and that the defendant performed that duty; (3) that even if there was a bailment in the ordinary sense of the term, plaintiff has failed to prove the defendant's negligence and the defendant has proved its due care; (4) that no bailment at all resulted from the facts set forth above, and that plaintiff must show the defendant's negligence by a fair preponderance of the credible evidence and has failed in so doing.

I do not think any of these grounds furnish a basis for a judgment in the defendant's favor in this case. Under the circumstances I conclude that the bag was handed to an employee of the defendant, even though the plaintiff could not positively identify any particular porter as the one to whom the bag was delivered. The presence of the porter on the platform of the terminal alongside of the defendant's Pullman cars, in full view of the defendant's other employees, his wearing of the uniform, badge and cap of the defendant — these raise a presumption that the porter was in the defendant's employ. (Mechem Agency, §§ 266, 267; *Hughes* v. *New York & N. H. R. R. Co.*, 35 N. Y. Super. 222; *Kilmer* v. *New York Telephone Co.*, 228 App. Div. 63; *Norris* v. *Kohler*, 41 N. Y. 42; *McCoun* v. *New York Central & Hudson River R. R. Co.*, 66 Barb. 338; *Soanes* v. *London & Southwestern Ry. Co.*, 120 L. T. [N. S.] 598.) Authority is not lacking that such evidence has an even greater effect. (See American Law Institute, Restatement of Law of Agency, § 47, comment d and illustration j.) Indeed, the defendant has not urged that the person to whom the bag was delivered was a stranger. If the bag was handed to Miles there is no question that he was in the defendant's employ. In either case, then, it must be found as a fact that the plaintiff handed his bag to an employee of the defendant.

It must next be determined whether the defendant's porter was acting within the scope of his employment, apparent or authorized, in taking the plaintiffs bag from him for the purpose of carrying it into the train. The duties of a Pullman porter are necessarily incapable of exact definition, but they certainly embrace the duty to be as helpful to Pullman passengers as conditions permit. Assisting a passenger to get on the Pullman car is clearly within the scope of a porter's employment, and that duty carries as a necessary concomitant the duty to assist passengers with their baggage. The porter, Miles, testified that it was the custom and his duty to assist Pullman passengers on and off the cars with their baggage. No

case has arisen in this State which passes upon this precise point, but analogous cases laying down a rule that is necessarily binding here are *Holmes* v. *North German Lloyd S. S. Co.* (184 N. Y. 280) and *Hasbrouck* v. *New York Central & H. R. R. R. Co.* (202 id. 363). In the *Holmes* case the defendant's baggage master took charge of the bags of a passenger of a steamboat as she was about to carry them onto the boat, assuring her that they would be carried to her room. The bags were never delivered to the plaintiff at her cabin or elsewhere. The Court of Appeals affirmed a judgment for the plaintiff for the value of the bags and their contents. In the *Hasbrouck* case the defendant's trainman took a passenger's bag into his custody in order to assist her in alighting from the train. When she alighted the bag was handed back to her by the trainman, but upon examination some time later she discovered that some of its contents were gone. She had not seen the bag between the time of its delivery to the trainman and its return to her. A judgment in her favor was affirmed by the Court of Appeals. If the employees involved in these cases acted within the scope of their employment, the defendant's porter must be held to have so acted here. This conclusion is strengthened by cases in other jurisdictions dealing with a railroad company's liability for the loss of articles or luggage intrusted to their porters or " red caps " as the passenger was about to board a train. In *Franklin* v. *Southern Pacific Railway Co.* (203 Cal. 680; 265 Pac. 936 [1928]) the plaintiff, about to board the defendant's train, handed her bag to the defendant's porter to carry it into the train. The bag was never returned to her. She brought a suit for the loss, and the Supreme Court of California affirmed a judgment in her favor. In *Booker* v. *Pennsylvania Railroad Co.* (82 Penn. Super. 588 [1924]) the plaintiff, about to board the defendant's train, handed his bag to a porter in the defendant's employ, to be brought onto the train. The bag was never delivered to the plaintiff. A judgment in the plaintiff's favor for the loss of the bag was upheld. In *Great Western Railway Co.* v. *Bunch* (L. R. 13 App. Cas. 31 [1888], affg. 17 Q. B. Div. 215 [1886]) the defendant's porter undertook to carry the plaintiff's baggage onto the defendant's train. The baggage was lost. It was held that the defendant was liable for its loss. In each of these cases it was urged, as does the defendant here, that the porter was the passenger's servant in helping him onto the train and that he was not the employee of the railroad company for that purpose. In each instance that argument was rejected. I find no authority in this State or elsewhere to support a different conclusion. Nor does it alter the liability of the defendant that the passenger tips the porter for so helping him. In the *Booker Case*

(*supra*) the court said: " It was not pretended that the railroad company advertised or informed the traveling public that it had engaged a number of trusted men whom it was prepared to furnish to passengers for employment by them as personal servants to assist in carrying their hand luggage for reasonable compensation. The money paid by the passenger was not compensation which the porter could have demanded or sued for in an action, but was rather a gratuity or tip which she was not bound to give and which the porter could not have recovered in an action of assumpsit if the passenger had not seen fit to give it. The fact that a traveler gives a tip to a porter for courteous service in the carriage of his hand luggage does not make the porter his servant for whose negligence he is responsible any more than a tip given to a bellboy in a hotel, to a waiter in a restaurant, or to a hatcheck employee, changes the status of their respective employment. Nor does the fact — if such is the case — that the railroad company does not pay its employees while they are ' portering only,' but that their sole source of revenue in such circumstances is the tips which they receive from passengers, negative the continuance of their employment while acting as porters, or relieve the employer of responsibility for their acts within the scope of their employment. If a waiter employed by a hotel or restaurant agrees to work without compensation from his employer, relying on the tips which he anticipates he will receive from the customers, he is none the less in the employ of the hotel or restaurant, and does not become the servant for the time being of each and every customer upon whom he may wait, nor could he sue the customer for compensation upon a *quantum meruit* if no tip was forthcoming. It is well known that hatcheck employees are frequently not only not paid by the hotel or restaurant where they are employed, but that in some instances large sums of money are paid for the concession, but this does not make the hatcheck employee the servant of the patron, who may or may not give him a tip." (See, also, *Southern Pacific Co.* v. *Maloney*, 136 Fed. 171.)

The custom of Pullman and railway employees to assist passengers with their baggage being so universal that the court may well take judicial notice thereof (See the remarks of McNAUGHTON, J., in *Great Western Railway Co.* v. *Bunch*, *supra*, at p. 55), it would produce a result most inequitable if it were held that the porters, in so doing, were nevertheless acting solely as the passengers' servants. The good will accruing to the defendant as a result of the helpfulness of its servants justifies the burden placed upon it of seeing that that service is performed well. Whether the liabilty here rests upon a theory of contractual liability or merely as upon

an undertaking by the defendant, the result must be the same in either case. (*Hasbrouck* v. *N. Y. C. & H. R. R. R. Co., supra,* p. 375.) That the defendant came under *some* duty with respect to the bag intrusted to the porter by the plaintiff can hardly be questioned. The duty was at least as great as that imposed upon the employees of the defendants in *Holmes* v. *North German Lloyd S. S. Co. (supra); Hasbrouck* v. *N. Y. C. & H. R. R. R. Co. (supra); Booker* v. *Penn. R. R. Co. (supra)* and *Bunch* v. *Great Western Ry. Co. (supra).* A passenger, about to board or alight from the train, may reasonably expect assistance with his baggage from the employees of the train, and if his bags are taken into their custody, the company must be held to account for the conduct of its servants with relation thereto. What then is the nature and extent of that duty? There was implied in the taking of the bag from the plaintiff the promise or undertaking to deal with it prudently and to account for its disposition.

The law is well settled that in assuming control and possession of the plaintiff's bag, the defendant became a bailee of the bag, and the rule is equally well settled that this liability must, therefore, be measured in terms of negligence. (*Goldstein* v. *Pullman Co.,* 220 N. Y. 549; *Hasbrouck* v. *N. Y. C. & H. R. R. R. Co.,* 202 id. 363; *Robbins* v. *Pullman Co.,* 164 N. Y. Supp. 111; *Holmes* v. *North German Lloyd S. S. Co.,* 184 N. Y. 280; *Adams* v. *New Jersey Steamboat Co.,* 151 id. 163; *Carpenter* v. *N. Y., N. H. & H. R. R. Co.,* 124 id. 53.)

Whether the plaintiff in any particular case has proved a *prima facie* case of negligence depends, of course, upon the facts in each case. (*Adams* v. *New Jersey Steamboat Co., supra.*) It seems to me, however, that under the authorities cited above, the plaintiff in the instant case has sustained his burden of proving the negligence of the defendant and that is so even if the test be deemed that of " gross negligence." (*Dalton* v. *Hamilton Hotel Operating Co., Inc.,* 242 N. Y. 481, 486.) He has proved the delivery of the bag to the defendant, a demand for its return and a refusal or inability on the part of the defendant to return it to him. Under the circumstances of the case, that is sufficient to shift the burden to the defendant of coming forward with some evidence of due care or explanation of the loss of the bag. In *Holmes* v. *North German Lloyd S. S. Co. (supra),* the court said (at p. 285): " It is unnecessary to determine whether the liability of the defendant in what may be termed the incidental service of carrying the passengers' hand luggage from the wharf to the stateroom was that of an insurer or merely for negligence. The loss of the suit cases unexplained established a *prima facie* case of negligence and no

explanation was given. The service thus rendered was not a voluntary one on the part of the employee outside of the scope of his duty, for it is the common custom of the stewards and other employees of an ocean steamer to carry the cabin baggage of the passengers on and off the boat." In *Irving* v. *Pullman Company* (84 N. Y. Supp. 248) a passenger asked the porter in charge of the car to care for his umbrella and to take it to his berth. The passenger then went to bed. He did not see the umbrella again after handing it to the porter. No explanation of the loss was furnished by the Pullman Company. It was held that these facts were sufficient to show the negligence of the defendant and judgment was awarded to the plaintiff. In the *Hasbrouck Case* (*supra*) the Court of Appeals said (p. 374): "The law required the defendant to return all the property intact, or to explain its loss in some satisfactory way, but it did neither. It did not deliver the rings or money on the implied demand of the plaintiff as she got off the train, and when confronted by proof of the facts in court it called no witness and gave no explanation. If the rings were stolen from its trainman, it should have proved the fact, and if the trainman, himself, stole them it would have been no defense, because the defendant was bound to employ faithful servants. (4 Elliot on Railroads, § 1623.) The obligation to deliver or to make an explanation sufficient in law rested on the defendant under all the circumstances and it did not discharge the obligation. As was said by Judge HOUGHTON for the Appellate Division: ' There being no explanation respecting the loss of the goods or endeavor to account for their non-delivery, * * * the plaintiff made a *prima facie* case of negligence. (*Fairfax* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 11.)' In the *Fairfax* case Judge RAPALLO said: ' When the plaintiff demanded the article it had disappeared, and no account is given of the cause of disappearance. This is *prima facie* evidence of negligence. (*Steers* v. *Liv., N. Y. & P. Sts. Co.*, 57 N. Y. 1) ' (p. 14.) In *Claflin* v. *Meyer* (75 N. Y. 260, 262) the court said: ' The cases agree that where a bailee of goods, although liable to their owner for their loss only in case of negligence, fails, nevertheless, upon their being demanded, to deliver them or account for such non-delivery, or, to use the language of SUTHERLAND, J., in *Schmidt* v. *Blood*, where " there is a total default in delivering or account for the goods " (9 Wend. 268), this is to be treated as *prima facie* evidence of negligence. (*Fairfax* v. *N. Y. C. & H. R. R. R. Co.*, 67 N. Y. 11; *Steers* v. *Liverpool, N. Y. & P. Steamship Co.*, 57 id. 1; *Burnell* v. *N. Y. C. R. R. Co.*, 45 id. 184.) This rule proceeds either from the assumed necessity of the case, it being presumed that the bailee has exclusive knowledge of the facts and that he is able to give

the reason for his non-delivery, if any exist, other than his own act or fault, or from a presumption that he actually retains the goods and by his refusal converts them.' * * * the plaintiff proved delivery to the defendant and failure on its part to re-deliver to her on demand. That made out a *prima facie* case, as we have held, and called on the defendant to explain why it did not restore the property." And at page 376 the court said: " the presumption from the evidence is that the defendant still has the articles in its possession or that it has converted them to its own use, and while the presumption could have been rebutted by a proper explanation none was given or attempted. The law does not require a bailor in an action against a bailee to answer a possible explanation of the latter in advance of its being made, and which in fact might never be made. Such an action rests on the presumption arising from delivery, demand and refusal, without affirmative proof of negligence in any respect." (See, also, *Palmer* v. *Pullman Co.*, 167 N. Y. Supp. 610; *Arthur* v. *Pullman Co.*, 44 Misc. 229; *Croll* v. *Pullman Co.*, 61 id. 265; *Bean* v. *Ford*, 65 id. 481, and *Voss* v. *Wagner Palace Car Co.*, 16 Ind. App. 271; L. R. A. 1918B, 1065.)

Similarly, here, believing as I do the testimony adduced by the plaintiff that the bag was delivered to the defendant's porter, to be brought to the plaintiff's berth, it was the duty of the defendant to either return the bag, to explain its disappearance or to show what care was taken of it. *There is no adequate proof that the bag was ever placed in the plaintiff's berth.* Indeed, Miles, a porter of the defendant, who testified that he was in charge of the train occupied by the plaintiff, denied ever having seen the bag, although he remembered the plaintiff and his complaining about its loss soon after the train started. Under such circumstances the argument made by the defendant that since Miles testified that he placed all the bags he handled that day in their proper berths, it followed that the plaintiff's was also so placed is wholly untenable. There being no adequate proof of the placing of the bag at the plaintiff's berth, the cases relied upon by the defendant, even if they support the propositions it urges, can have no application, for the bag was under the exclusive control of the defendant from the moment that the plaintiff delivered it to the defendant's porter. Similarly, the argument that there was a quasi bailment for a particular purpose and that it was performed must likewise fall. And it also follows that the attempted distinction between night-time losses and day-time losses has no place here. Even if it had, the cases are clear in holding that there is a duty to exercise care over the property intrusted to a Pullman company, both day and night. However, the extent to which the defendant will have to exert itself to perform

that duty will, of course, vary from night to day. (See *Robbins* v. *Pullman Co., supra; Goldstein* v. *Pullman Co., supra.*)

The plaintiff acted reasonably in handing his bag to the defendant's porter at the steps leading into the car and then, after five minutes, going into the car himself. The surrounding circumstances here suggest " that a loss ordinarily would not happen if care commensurate to the duty " imposed on the defendant had been exercised. (*Goldstein* v. *Pullman Co., supra,* at p. 554.) The facts, as presented by the plaintiff, shifted the burden of coming forward with evidence to show what degree of care and diligence was actually exercised or what became of the bag. (*Holmes* v. *North German Lloyd S. S. Co., supra.*) (See *Goldstein* v. *Pullman Co., supra,* at p. 553, where the court said: " The tendency in the more modern decisions in cases like this is to put the company on its defense when the loss is inconsistent with the proper care and the facts are in its possession, because ' the thing itself speaks.' CULLEN, J., in *Griffen* v. *Manice* (166 N. Y. 188, 193, 194), writing of *res ipsa loquitur,* says that negligence may be established by proof of circumstances in all cases; that ' it is not the injury, but the manner and circumstances of the injury, that justify * * * the inference of negligence; ' that ' where the defendant has knowledge of a fact, but slight evidence is requisite to shift on him the burden of explanation; ' that, therefore, in proper cases the jury may be permitted to infer negligence from the accident and the attending circumstances in the absence of an explanation and that these rules are general, not confined to any particular class of cases, but applicable wherever issues of fact are to be determined.")

The defendant failed to introduce any evidence explaining the loss of the bag or showing due care. The evidence offered by the defendant was concerned chiefly with the fact that no such bag had been put on the train at all and that after the loss was reported a fruitless search of the entire train was made. No evidence was given of the construction of the car, the number of porters assigned to it, the number and condition of the exits and entrances and the windows through which the bag may have been stolen, whether baggage, once inside the car, was watched, or evidence in any way tending to show what might have happened to the plaintiff's bag. Indeed, the defendant having denied ever having had custody of the bag, the issue so created was in effect the only one upon which the defendant offered any proof.

Two cases bear distinction from the instant situation. In *Sneddon* v. *Payne* (114 Misc. 537) the plaintiff handed his bag to a " red cap " porter *not in the employ of the defendant,* who took the bag into the train. When the plaintiff got on the train a few

minutes later, he did not find his bag. It was held that the defendant was not liable because it was not shown that the bag was ever in the sole custody of the defendant. In *Weingart* v. *Pullman Co.* (58 Misc. 187) a passenger gave his coat to a porter as he was entering the train, and told him to put it on the seat he had engaged. The porter did so. The plaintiff then went into another car and remained there an hour and a half. Upon his return he found his coat had disappeared. It was held that the plaintiff had not established a cause of action because " the coat was not left in the care or custody of the defendant's servant " (p. 188). Neither these cases nor those cited by the defendant are authorities against the plaintiff. Indeed, the cases cited by the defendant sustain the rule here laid down. (See *Honig* v. *Riley*, 244 N. Y. 105; *Adams* v. *New Jersey Steamboat Co., supra; Carpenter* v. *N. Y., N. H. & H. R. R. Co., supra; Williams* v. *Webb*, 27 Misc. 508.)

I conclude, therefore, that the plaintiff has established the negligence of the defendant by a preponderance of the evidence. In so doing, I bear in mind the admonition of the Court of Appeals in the *Hasbrouck Case (supra)*, " that fraud may be practiced upon railroad companies by unscrupulous passengers, and the necessity for clear proof and conservative action by the courts." The plaintiff's evidence of the delivery of the bag to the defendant's porter was reasonable and credible and was supported by the testimony of his mother and Faippers. All of their testimony remained unshaken in its material aspects on cross-examination. I regard the proof here as clearly establishing the plaintiff's cause of action. The plaintiff is entitled to damages for the bag and such of its contents as were reasonably appropriate to the journey and the plaintiff's destination. Consideration must be given to the plaintiff's station in life, the duration and length of the journey and its purposes. In *Knieriem* v. *New York Central & H. R. R. R. Co.* (146 App. Div. 661, 665) the court said, quoting in part from the *Hasbrouck* case: " The contract to transport the plaintiff carried with it the duty of transporting a reasonable amount of hand baggage, such as is commonly taken by travelers for their personal use, the quantity and value depending upon station in life, object of the journey and other considerations. (*Merrill* v. *Grinnell*, 30 N. Y. 594; *Carlson* v. *Oceanic Steam Navigation Co.*, 109 id. 359; *Railroad Co.* v. *Fraloff*, 100 U. S. 24, 29; Ray on Negligence of Imposed Duties, 561, 564; 4 Elliot on Railroads, 2604, 2605.) As was said by Chief Justice COCKBURN in *Macrow* v. *Great Western Railway Co.* (L. R. [6 Q. B.] 612, 621): ' Whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate

necessities or to the ultimate purpose, of the journey, must be considered as personal luggage.' " (See, also, *Sherman* v. *Pullman Company*, 79 Misc. 52.) The articles contained in the plaintiff's bag, established by proof at the trial, were all articles a young man on his way back to college might well be expected to carry. After due allowance for the use to which some of the articles had been put, I find the value of the bag and its contents to have been as follows: Bag, $75; handkerchiefs, $60; underwear, $36; studs, $125; clock, $35; suit, $35; pajamas, $37.50; robe, $125; ties, $75; socks, $48; leather case and contents, $45; shirts, $24; raincoat, $50. This totals $770.50. No testimony was given with regard to the value of the cigarette lighter, and hence that item is excluded from this computation.

The defendant's motions upon which decision was reserved are denied, with exception to the defendant. Verdict is directed in favor of the plaintiff in the sum of $770.50, with interest thereon from September 15, 1930.